## HICKEL, SECRETARY OF THE INTERIOR v. OIL SHALE CORP. ET AL.

No. 25. Argued October 22, 1970—Decided December 8, 1970

DOUGLAS, J., delivered the opinion of the Court, in which BLACK, BRENNAN, and BLACKMUN, JJ., joined. BURGER, C. J., and STEWART, J., filed a dissenting statement, *post*, p. 61. HARLAN, WHITE, and MARSHALL, JJ., took no part in the consideration or decision of the case.

*Peter L. Strauss* argued the cause for petitioner. With him on the briefs were *Solicitor General Griswold, Assistant Attorney General Kashiwa, S. Billingsley Hill, Thos. L. McKevitt,* and *Edmund B. Clark.*

*Fowler Hamilton* argued the cause for respondents. With him on the briefs for respondents Oil Shale Corp. et al. were *Richard W. Hulbert* and *Donald L. Morgan. John D. Knodell, Jr., Fred M. Winner,* and *Warren O. Martin* filed a brief for respondents Umpleby et al.

MR. JUSTICE DOUGLAS delivered the opinion of the Court.

This case involves six groups of claims to oil shale located in Colorado and asserted under the General Mining Act of 1872, 17 Stat. 91, now 30 U. S. C. §§ 22, 26, 28, and 29. Section 28 provides that until a patent issued "not less than $100 worth of labor shall be performed or improvements made during each year." [1] And § 29

---

[1] Section 28 reads in part:

"On each claim located after the 10th day of May 1872, and until a patent has been issued therefor, not less than $100 worth of labor shall be performed or improvements made during each year. . . . [U]pon a failure to comply with these conditions, the claim or mine upon which such failure occurred shall be open to relocation in the same manner as if no location of the same had ever been made, provided that the original locators,

provides that a patent to the claim could issue on a showing that the claimant had expended $500 worth of labor or improvements on the claim. These claims are not patented and were canceled in the early 1930's on the ground that the amount of labor or improvements specified in § 28 had not been made "during each year." [2]

Some of the claimants in this case applied for patents between 1955 and 1962. The General Land Office rejected the patent applications because the claims had been canceled. On appeal, the Secretary of the Interior, acting through the Solicitor, ruled that these cancellations were effective, later judicial determinations of the invalidity of the grounds for cancellation notwithstanding. *Union Oil Co.,* 71 I. D. 169.[3] These claimants then sought an order to compel the Department to issue the patents. They argued that the Land Office was without authority to cancel the claims when it did and that the Secretary of the Interior had nullified all the contest proceedings in 1935. In the alternative, they sought judicial review of those contest rulings. Respondent Oil Shale Corp. commenced this action in the District Court, not to require the Secretary to

---

their heirs, assigns, or legal representatives, have not resumed work upon the claim after failure and before such location. . . ."

Section 29 reads in part:

"The claimant at the time of filing this application, or at any time thereafter, within the sixty days of publication, shall file with the Manager a certificate of the United States Chief Cadastral Engineer that $500 worth of labor has been expended or improvements made upon the claim by himself or grantors . . . ."

[2] For a description of the claims involved in this case see the Appendix to this opinion.

[3] It was admitted that the cancellations may have been erroneous. He declared, however, that the Commissioner of the General Land Office had jurisdiction to make the determinations. Therefore, since the rulings were not appealed from, they were *res judicata,* not subject to attack in 1962.

issue a patent, but to expunge the rulings of the Secretary canceling the claims and to enjoin him from enforcing them. All the cases were consolidated for trial in the District Court. The District Court granted the relief, 261 F. Supp. 954, and the Court of Appeals affirmed, 406 F. 2d 759, both holding that cancellations for lack of assessment work were void because the Department did not have jurisdiction over the subject matter. The case is here on petition for certiorari, which we granted to consider whether *Wilbur* v. *Krushnic*, 280 U. S. 306, and *Ickes* v. *Virginia-Colorado Development Corp.*, 295 U. S. 639, had been correctly construed and applied to invalidate the Secretary's action in protection of the public domain.

Before we come to a consideration of the *Krushnic* and *Virginia-Colorado* cases it should be noted that in 1920, Congress by enacting § 21 of the Mineral Lands Leasing Act, 41 Stat. 445, 30 U. S. C. § 241 (a), completely changed the national policy over the disposition of oil shale lands. Thereafter such lands were no longer open to location and acquisition of title but only to lease. But § 37 contained a Saving Clause which covered "valid claims existent on February 25, 1920, and thereafter maintained in compliance with the laws under which initiated, which claims may be perfected under such laws, including discovery." 30 U. S. C. § 193. Respondents contend that their claims fall within that exception.

Respondents assert that a like claim was recognized and approved in the *Krushnic* case. In that case, however, labor in the statutory amount had been performed, including the aggregate amount of $500. The only default was in the failure to perform labor for one year during the period. Mandamus for the issuance of a patent was directed, the Court saying:

"Prior to the passage of the Leasing Act, annual performance of labor was not necessary to preserve

the possessory right, with all the incidents of owner-
ship . . . , as against the United States, but only
as against subsequent relocators. So far as the gov-
ernment was concerned, failure to do assessment
work for any year was without effect. Whenever
$500 worth of labor in the aggregate had been per-
formed, other requirements aside, the owner became
entitled to a patent, even though in some years
annual assessment labor had been omitted." 280
U. S., at 317.

The Court further held that the claims were "main-
tained" within the Saving Clause of the Leasing Act
by a resumption of the assessment work before a chal-
lenge of the claim by the United States had intervened.

*Virginia-Colorado* also involved claims on which labor
had been expended except for one year. It was alleged,
however, that the claimant had planned to resume the
assessment work but for the Secretary's adverse action
and that the claims had not been abandoned. The Court
held that the claims had been "maintained" within the
meaning of the Saving Clause of the Leasing Act of
1920.

Those two cases reflect a judicial attitude of fair treat-
ment for claimants who have substantially completed
the assessment work required by 30 U. S. C. § 28. There
are, however, dicta both in *Virginia-Colorado* and in
*Krushnic* that the failure to do assessment work gives the
Government no ground for forfeiture but inures only to
the benefit of relocators.

Indeed 30 U. S. C. § 28, which derives from the 1872
Act, as already noted,[4] provides that upon the failure
to do the assessment work, "the claim or mine upon

---

[4] See n. 1, *supra.* For a recent account of the operation of the
1872 Act and the Leasing Act of 1920 see One Third of the Nation's
Land, Report by the Public Land Law Review Commission 124–138.

which such failure occurred shall be open to relocation in the same manner as if no location of the same had ever been made," provided the assessment work has not been "resumed" upon the claim "after failure and before such location." It is therefore argued that so far as the 1872 Act is concerned the failure to do the assessment work concerns not the Government but only "rival or adverse claimants." [5]

The problem in those two cases and the present one concerns the Saving Clause in the Leasing Act which, as noted, makes available for patent "valid claims existent on February 25, 1920, and thereafter maintained in compliance with the laws under which initiated." Concededly, failure to maintain a claim made it "subject to disposition only" by leasing by the United States. See § 37 of the 1920 Act, 30 U. S. C. § 193. Hence if we assume, *arguendo,* that failure to do assessment work as provided in the 1872 Act concerned at the time only the claimant and any subsequent relocator, the United States, speaking through the Secretary of the Interior, became a vitally interested party by reason of the 1920 Act. For it was by that Act that Congress reclaimed portions of the public domain so that land might be disposed of by a different procedure (leasing) to the same end (oil shale production [6]) or devoted to wholly

---

[5] The regulations provide:

"The annual expenditure of $100 in labor or improvements on a mining claim, required by section 2324 of the Revised Statutes (30 U. S. C. 28), is . . . solely a matter between rival or adverse claimants to the same mineral land, and goes only to the right of possession, the determination of which is committed exclusively to the courts." 43 CFR § 3420.4.

[6] The value to the Government of the Leasing Act is shown by the magnitude of the interests at stake. We are told that respondent Oil Shale Corp. bid for a lease of 5,120 acres of federal oil shale land in Colorado. 33 Fed. Reg. 16154. The projected

different purposes [7] within the purview of public policy as determined by Congress.

It appears that shortly before 1920 oil shale claims were affected by a speculative fever. Then came a period of calm. By the late forties and continuing into the sixties speculators sought out the original locators or their heirs, obtained quitclaim deeds from them, and thereupon eliminated all other record titleholders by performing assessment work for one year.[8] It appears that 94 of the 98 claims involved in the present litigation were of that character. There is nothing reprehensible in the practice, if the procedure is one which Congress has approved. But the command of the 1872 Act is that assessment work of $100 be done "during each year" and the Saving Clause of § 37 of the 1920 Act requires that for lands to escape the leasing requirement the claims must be "maintained in compliance with the laws under which initiated."

The legislative history of the 1872 Act does not throw much light on the problem. Senator Cole, proponent of that Act, explained, however, that the requirement of assessment work was made to adopt the Spanish law which granted mining titles but subjected them "to what they term denouncement of the title or defeasance of the title upon a failure to work the mine after a certain

---

operations were estimated to yield 40 gallons of oil per ton, the royalty being 24¢ per ton. *Id.*, at 16156. The projected mining rate of 66,000 tons per day for 330 days a year would produce an annual royalty of close to $5,230,000. The project life was 20 years.

[7] The lands containing oil shale became open to agricultural and other nonmineral entries including, *inter alia,* those under the Stock-Raising Homestead Act of 1916, 39 Stat. 862, 43 U. S. C. § 291 *et seq.,* to oil and gas and sodium leasing under the 1920 Act, to Indian tribal lands in Utah and to grazing districts under the Taylor Grazing Act, 48 Stat. 1269, 43 U. S. C. § 315 *et seq.*

[8] See n. 3, Appendix, *infra.*

time." Cong. Globe, 42d Cong., 2d Sess., 2459 (1872). While the objective of the 1872 Act was to open the lands "to a beneficial use by some other party," once the original claimant defaulted, the defeasance inevitably accrued to the United States, owner of the fee. On that premise it would seem that the dicta in *Krushnic* and in *Virginia-Colorado* are not valid.

The history of the 1920 Act throws a little light on the problem.

In the Senate there was considerable debate over the addition of the words "including discovery" at the end of § 37, which contains the Saving Clause.

> "Mr. JONES of New Mexico. Suppose we use the words 'including discovery.'
>
> "Mr. SMOOT. Very well; if the Senator desires to insert the words 'including discovery' I shall offer no objection.
>
> "Mr. WALSH of Montana. Mr. President, I was going to say to Senators that to my mind discovery does not necessarily perfect the claim, because the claimant would not be entitled to a patent unless he had performed $500 worth of work, and in a just sense his claim would not be protected.
>
> "Mr. SMOOT. The words 'under such laws' cover everything—the $500 worth of work, discovery, and everything else.
>
> "Mr. WALSH of Montana. But the words 'including discovery,' now proposed, it seems to me, will make it plain.
>
> "Mr. SMOOT. I have no objection to those words going in the bill." 58 Cong. Rec. 4584.[9]

---

[9] The amendment was thereupon agreed to. There was no change made in the House in this respect. H. Rep. No. 398, 66th Cong., 1st Sess., 11. And see the Conference Report, H. R. Rep. No. 600, 66th Cong., 2d Sess., 16.

The "perfection" of the claims "under such laws" thus seemingly meant compliance with "everything" under 30 U. S. C. § 28, which taken literally would mean assessment work of $100 "during each year."

If we were to hold to the contrary that enforcement of the assessment work of § 28 was solely at the private initiative of relocators, the "maintenance" provision of § 37 becomes largely illusory, because relocation of oil shale claims became impossible after the 1920 Act. So if enforcement of the assessment work requirement of § 28 were dependent solely on the activities and energies of oil shale relocators, there was no effective enforcement device. While the area covered by the claims might possibly be relocated for wholly different purposes, the likelihood was so remote that the Court of Appeals concluded that: "The old claims were thus sheltered by the [1920] Act." 406 F. 2d, at 763. That meant that a claim could remain immune from challenge by anyone with or without any assessment work, in complete defiance of the 1872 Act.

The Court concluded in *Virginia-Colorado* that the lapse in assessment work was no basis for a charge of abandonment. 295 U. S., at 645–646. We construe that statement to mean that on the facts of that case failure to do the assessment work was not sufficient to establish abandonment. But it was well established that the failure to do assessment work was evidence of abandonment. *Union Oil Co.* v. *Smith*, 249 U. S. 337, 349; *Donnelly* v. *United States*, 228 U. S. 243, 267. If, in fact, a claim had been abandoned, then the relocators were not the only ones interested. The United States had an interest in retrieving the lands. See G. Widman, T. Brightwell, & J. Haggard, Legal Study of Oil Shale on Public Lands 189–193 (1969). The policy of leasing oil shale lands under the 1920 Act gave the United States a

keen interest in recapturing those which had not been "maintained" within the meaning of § 37 of that Act. We agree with the Court in *Krushnic* and *Virginia-Colorado* that every default in assessment work does not cause the claim to be lost. Defaults, however, might be the equivalent of abandonment; and we now hold that token assessment work, or assessment work that does not substantially satisfy the requirements of 30 U. S. C. § 28, is not adequate to "maintain" the claims within the meaning of § 37 of the Leasing Act. To hold otherwise would help defeat the policy that made the United States, as the prospective recipient of royalties, a beneficiary of these oil shale claims. We cannot support *Krushnic* and *Virginia-Colorado* on so broad a ground. Rather, their dicta to the contrary, we conclude that they must be confined to situations where there had been substantial compliance with the assessment work requirements of the 1872 Act, so that the "possessory title" of the claimant, granted by 30 U. S. C. § 26, will not be disturbed on flimsy or insubstantial grounds.

Unlike the claims in *Krushnic* and *Virginia-Colorado*, the Land Commissioner's findings indicate that the present claims had not substantially met the conditions of § 28 respecting assessment work. Therefore we cannot say that *Krushnic* and *Virginia-Colorado* control this litigation. We disagree with the dicta in these opinions that default in doing the assessment work inures only to the benefit of relocators, as we are of the view that § 37 of the 1920 Act makes the United States the beneficiary of all claims invalid for lack of assessment work or otherwise. It follows that the Department of the Interior had, and has, subject matter jurisdiction over contests involving the performance of assessment work. We conclude therefore that the judgments below must be reversed.

Respondents rely upon the response of the Department of the Interior to the *Virginia-Colorado* case in

which the Secretary declared the contest in that case to be "void." He also declared that "other Departmental decisions in conflict with this decision are hereby overruled." *Shale Oil Co.,* 55 I. D. 287, 290. This decision, they argue, nullified the previous contest proceedings in which their claims were voided. Moreover, they contend that this administrative rule of 35 years, upon which the Department itself has relied, may not now be retroactively changed. In addition, they claim that these contest decisions, if still valid, are subject to direct judicial review at this time, testing both substantive and procedural errors, such as lack of notice.[10]

These contentions present questions not decided below. Therefore, on remand all issues relevant to the current validity of those contest proceedings will be open, including the availability of judicial review at this time. To the extent that they are found void, not controlling, or subject to review, all issues relevant to the invalidity of the claims will be open, including inadequate assessment work, abandonment, fraud, and the like. Likewise all issues concerning the time, amount, and nature of the assessment work will be open so that the claimants will have an opportunity to bring their claims within the narrow ambit of *Krushnic* and *Virginia-Colorado,* as we have construed and limited these opinions.

*Reversed and remanded.*

MR. JUSTICE HARLAN, MR. JUSTICE WHITE, and MR. JUSTICE MARSHALL took no part in the consideration or decision of this case.

---

[10] The Secretary has held that the old default proceedings are subject to reopening as to any locator for whom receipt of service is not adequately shown. *Union Oil Co. of Calif.,* 72 I. D. 313.

## APPENDIX TO OPINION OF THE COURT

One group of claims in question was composed of 48 (Bute) claims located by nine individuals between December 1919 and January 1920, shortly before February 25, 1920, the cutoff date for prior valid claims recognized by the Saving Clause of the 1920 Act.[1] The records show an entry in February 1921 of a "Notice in Lieu of Labor."[2] No other entries were made. In 1954, a man by the name of Ertl acquired the claims of two of this group. In 1955, he filed an "Affidavit of Annual Labor" and published a forfeiture notice in the newspaper.[3] In 1956, he acquired a decree in a Colorado court quieting title in him to all interests in all the claims of this group. Another group of 18 (Atlas) claims

---

[1] Section 37 of the Act, 30 U. S. C. § 193, reads in part: "The deposits of . . . oil shale . . . herein referred to, in lands valuable for such minerals . . . shall be subject to disposition only in the form and manner provided [in this Act], except as to valid claims existent on February 25, 1920, and thereafter maintained in compliance with the laws under which initiated, which claims may be perfected under such laws, including discovery."

[2] Congress suspended the $100 labor or improvements requirement for the year 1919. Such suspensions were also allowed by Congress for the years 1933 to 1938, 1942, 1943, 1948, and 1949.

[3] By a provision of the 1872 Act, now 30 U. S. C. § 28, where any of several co-owners has not contributed his share of assessment work, one or more co-owners who have done the work may give the delinquent co-owner notice in writing or by publication for at least once a week for 90 days and if at the end of that time the delinquent fails or refuses to contribute his share, "his interest in the claim shall become the property of his coowners who have made the required expenditures." That federal right is enforceable in state courts. See *Hamilton* v. *Ertl*, 146 Colo. 80, 360 P. 2d 660.

For the history of the law which allows assessment work on one claim to inure to the benefit of a group of claims see *Union Oil Co.* v. *Smith*, 249 U. S. 337, 350–351.

was located in December 1919 by nine individuals.. In February 1921, à "Notice in Lieu of Labor" was filed.. No other instruments were filed. In 1954, Ertl acquired the interests of two of this group. In July 1955, he filed an "Affidavit of Annual Labor" and published a forfeiture notice. In September, a man named Dutton acquired an interest in the claims of two locators of this group and, in May 1956, Ertl quieted title in himself to the entire group. Another group of 20 (Camp Bird) claims was located in 1920. No instruments were filed regarding annual labor. In 1955, Mr. Dutton acquired the interests of two of the eight locators, and Mr. Ertl acquired the interests of four in 1956. Ertl filed an "Affidavit of Annual Labor" and published a forfeiture notice. Dutton responded and a court quieted title in the two of them, 75% in Ertl and 25% in Dutton.

In January, Ertl transferred all his interest in the above claims to Energy Resources Technology Land, Inc. (ERTL). Mr. Dutton transferred any interest he held in the above claims to ERTL and ERTL conveyed title to 16 of the Bute claims, Nos. 33–48, to Dutton. These 16 claims were eventually purchased by Oil Shale Corp. for $1,536,000. In 1963, Oil Shale leased all of the remaining claims from ERTL for $148,000 per year. Forty-six of the Bute claims, including the 16 purchased by Oil Shale, nine of the Atlas claims and all 20 of the Camp Bird claims are involved in the litigation here.

Another group of 20 claims (Carbon 1–8 and Elizabeth 1–12) passed through several hands, and after notice and forfeiture, as above, is held by Wasatch Development Co. and Joseph Umpleby. Sixteen of these are involved here. Another group of four (SW, NW, NE, & SE) claims has a similar history, and three of those

are involved here. The last group of claims (Oyler 1–4) is the only group in which there has been no claim of forfeiture. All four of these are involved here.

THE CHIEF JUSTICE and MR. JUSTICE STEWART dissent. They believe the Court of Appeals in this litigation correctly construed and applied this Court's decisions in *Wilbur* v. *Krushnic,* 280 U. S. 306, and *Ickes* v. *Virginia-Colorado Development Corp.,* 295 U. S. 639. Accordingly, unless those decisions are to be overruled, they would affirm the judgment before us.