Mary Helen **MARTINEZ,**
Appellant/Cross-Appellee,

v.

**ANCHORAGE SCHOOL DISTRICT,**
Appellee/Cross-Appellant.

Nos. S–108, S–124.

Supreme Court of Alaska.

May 3, 1985.

John B. Patterson, Strachan, Kelly & Patterson, Anchorage, for appellant/cross-appellee.

Adrienne P. Fedor, Peter C. Partnow, Hellen, Partnow & Condon, Anchorage, for appellee/cross-appellant.

Before BURKE, C.J., and RABINOWITZ, MATTHEWS, COMPTON and MOORE, JJ.

OPINION

RABINOWITZ, Justice.

AS 14.20.140 requires a school district which decides not to retain a teacher to deliver notice to that teacher. In this case the parties ask us to decide whether or not Mary Helen Martinez, whom the Anchorage School District hired a few weeks into the 1981–82 school year, was a "teacher" within the meaning of the statute. If so, we must then decide whether the District's nonretention notice was timely. We hold that even if Martinez was entitled to invoke the statute, the Anchorage School District did not violate AS 14.20.140. Accordingly, we affirm the decision of the superior court, which granted summary judgment against Martinez.

Not long after the 1981–82 school year began, a tenured third-grade teacher at O'Malley Elementary School took an unexpected leave of absence. The School District then hired Martinez to fill the vacancy. She signed a contract, prepared by the School District, which purported to limit her rights to continuing employment. The title read: "Certified Employee's Contract for Temporary Employment." In bold-faced print, just below the title, the document warned: "NOTE: THIS CONTRACT IS FOR TEMPORARY EMPLOYMENT PURPOSES ONLY." One paragraph recited that "[t]his contract creates no obligation on the District to offer continuing employment to employees except as provided by statute," and a note to this paragraph conveyed a similar message: "This contract does not confer upon you a right of employment beyond the period contracted for herein." These contractual provisions were standard: Martinez was one of one hundred and thirty-two School District employees hired pursuant to this type of contract during the 1981–82 term.

As the year wore on, the principal at O'Malley decided that Martinez' teaching

had not been satisfactory. He advised her that he would not recommend she be hired for the 1982–83 school year. Eventually, the School District accepted this recommendation, and its personnel office prepared a letter informing Martinez that her name had been removed from the "Preferential Hire list" for 1982–83.[1]

In our view, the important question is whether the School District delivered this notice in a timely fashion. AS 14.20.140 provides:

*Notification of nonretention.* (a) If a teacher who has acquired tenure rights is not to be retained for the following school year, the employer shall notify the teacher of the nonretention by writing, delivered before March 16, or by registered mail postmarked before March 16.

(b) If a teacher who has not acquired tenure rights is not to be retained for the following school year the employer shall notify the teacher of the nonretention by writing delivered on or before the last day of the school term or by registered mail postmarked on or before the last day of the school term.

Assuming that Martinez was a "teacher" —a point which the School District does not concede—the facts from which one might conclude that the notice was "delivered on or before the last day of the school term" are important.[2]

The last day of the school term was Friday June 4, 1982. The School District's letter, dated that day, had been prepared and was waiting at the School District's administration building. However, Martinez was at O'Malley Elementary, some miles away, so a School District employee was dispatched to O'Malley with a copy of the letter. Meanwhile, Martinez' supervisors at O'Malley told her to go to the administration building, where a letter would be waiting for her. The School District employee arrived after Martinez had left O'Malley Elementary, and Martinez never entered the administration building on June 4, 1982. She actually picked up the letter three days later, on June 7, 1982. Martinez subsequently filed suit, claiming the School District had not delivered an appropriate nonretention notice during the time provided by statute, and seeking an order reinstating her as a teacher for the 1982–83 school year.

The superior court held that Martinez was a non-tenured teacher, which entitled her to notice of nonretention under AS 14.20.140(b). It also held that the content of the notice was adequate, and that the correct official had signed it. The superior court then reasoned, "[t]he policy embodied in the personal delivery and registered mail provisions of the statute is that the Legislature intended that notice of non-retention be promptly and reliably given to a teacher at the end of the school year so as to allow the teacher to know what his or her employment status will be for the next year, and to afford the employee ample opportunity to seek alternate employment, if necessary, before the advent of the new school year." Noting that if the School District had mailed a registered letter on June 4 Martinez probably would not have received the letter until June 7, the superior court concluded "[o]n the facts of this case" that

1. The letter read, in pertinent part:
   Dear Ms. Martinez:
   The Personnel Department recently received your 1981/82 performance evaluation and a memorandum dated April 28, 1982 from your principal. Based upon your unsatisfactory performance evaluation and the principal's recommendation, we regret to inform you that your name has been removed from the Preferential Hire list for the 1982/83 school year.
   Your file will be placed in the active application section of the Personnel Department and your name submitted to the Substitute Teacher Dispatch Office upon receipt of the enclosed ASD Forms 1215 and 1274.
   Should you have questions, please call me.
   Sincerely,
   -/s/-
   Rita R. Strachan
   Director for Personnel

2. No one contends that Martinez was a tenured teacher, so AS 14.20.140(b), not .140(a), is the statute we must interpret.

Martinez' receipt of the letter on June 7 was timely. Both parties then appealed.

The School District sent a copy of the letter to O'Malley School and kept another copy at its administrative offices, so that Martinez could pick it up on June 4. However, she picked it up on June 7. The School District thus made two different efforts to inform Martinez that she would not be retained. Neither of these efforts constituted timely "service," enabling us to hold that the School District had served Martinez with notice on June 4. But, AS 14.20.140(b) does not require notice to be "served"; it requires the notice to be "delivered." In law "delivery" may be constructive as well as actual, and in several situations the person to whom a thing is delivered need not actually have received it at the time the "delivery" takes place. Black's Law Dictionary 385–86 (5th ed. 1979). We think the Legislature's use of the term "delivery" forces us to examine the purposes behind the notice requirement. On examination, we agree with the superior court's interpretation.

At the end of a school year a teacher may well assume that he or she will be retained. Notice of nonretention counters that assumption and enables the teacher to look for alternative employment. Therefore, the later the notice is delivered, the fewer the teacher's job opportunities may be. To protect non-tenured instructors the Legislature has specified two methods by which employers may notify those teachers that will not be retained. Just as the superior court observed, we note that the sending of notice by registered mail does not ensure a teacher will receive notice on the last day of a school year. If a letter is mailed on the last day allowable under the statute it probably will not arrive until several days after the end of the school year. We see no reason for the Legislature to have required notices that are "delivered" to arrive earlier than notices that are mailed. Mailing of the notice on the

last day of the school year constitutes substantial compliance with AS 14.20.140(b), even though actual notice of nonretention does not occur until after the last day of the school year. Accordingly, we hold that notice received on the day a registered letter probably would have arrived was, "on the facts of this case," sufficient to fulfill the policies behind AS 14.20.140(b). Because notice thus satisfied AS 14.20.140(b),[3] we need not decide whether Martinez was a "teacher" entitled to the notice delivered to her.

AFFIRMED.

COMPTON, J., dissents.

COMPTON, Justice, dissenting.

The court is asked to interpret AS 14.20.140(b), part of a comprehensive statutory scheme governing the employment and tenure rights of teachers and school officials. AS 14.20.140(b) provides:

> If a teacher who has not acquired tenure rights is not to be retained for the following school year the employer shall notify the teacher of the nonretention by writing delivered on or before the last day of the school term or by registered mail postmarked on or before the last day of the school term.

The court concludes that Martinez was notified of her nonretention by constructive delivery within the statutorily mandated period because the notice was actually delivered within the time in which she would have received notice had it been sent by registered mail postmarked on the last day of the term. I believe the court misapplies the constructive delivery doctrine. Further, I do not agree that substantial compliance will satisfy the statutory notice requirement. Therefore I dissent.

AS 14.20.140(b) is unambiguous. A school district which does not intend to rehire a nontenured teacher must notify the teacher in writing delivered or post-

---

**3.** The notice Martinez received satisfactorily informed her that she would not be retained for the next school year.

marked by the last day of the school term. When a statutory directive is clear and unambiguous, it should not be extended or modified by judicial resort to the principles of statutory construction unless the party asserting a different meaning meets a heavy burden of demonstrating a contrary legislative intent, *University of Alaska v. Geistauts*, 666 P.2d 424, 428 n. 5 (Alaska 1983); *State v. City of Haines*, 627 P.2d 1047, 1049 (Alaska 1981). We should not lightly ignore this legislative determination of how best to protect teachers. The burden of compliance is not so great as to justify relieving the school district of the obligation of strict compliance. *See, e.g., Tsakiris v. Phoenix Union High School System*, 18 Ariz.App. 416, 502 P.2d 1093 (1972).

The court frames the issue in terms of constructive delivery. Decisions involving constructive delivery clearly indicate that the doctrine relates to the *method* of delivery. Since Martinez was notified of her nonretention by the method of actual delivery, the constructive delivery doctrine is irrelevant. Constructive delivery is unrelated to the *timing* of actual delivery. *See, e.g., Matter of Estate of Lewis*, 97 Idaho 299, 543 P.2d 852, 855 (1975), (actual delivery to agent of donee); *Winsor v. Powell*, 209 Kan. 292, 497 P.2d 292, 302 (1972) (actual delivery to donee's safe deposit box); *Lakeview Gardens v. Kansas ex rel. Schneider*, 221 Kan. 211, 557 P.2d 1286, 1290–91 (1976) (setting marked goods aside and notifying buyer).[1] The issue is whether Martinez received timely actual delivery of the notice of nonretention.

Notice of nonretention is timely if it is sent by registered mail postmarked by the last day of the school term even if the teacher receives it thereafter. *Rapp v. Los Angeles City School District*, 5 Cal.App.2d 342, 42 P.2d 1039, 1040 (1935); *Davis v. Moseley*, 230 N.C. 645, 55 S.E.2d 329, 330 (1949). Notice of nonretention is also time-

ly if it is sent by nonregistered mail and received by the teacher before the last day of the term, because the writing is "delivered" within the statutory period. *Volandri v. Taylor*, 124 Cal.App. 356, 12 P.2d 462, 463 (1932). Notice is not timely if it is sent by unregistered mail before the statutory deadline, but the teacher does not receive it until after the last day of the term, *Strickland v. Berger*, 336 So.2d 176, 177 (Ala.1976); *Reed v. Board of Education*, 125 Cal.App. 714, 14 P.2d 330, 330–31 (1932); *Blalock v. Ridgway*, 92 Cal.App. 132, 267 P. 713, 715 (1928), even if the notice is mailed early enough to arrive before the statutory deadline under normal circumstances. *Welo v. District School Board*, 24 Or.App. 443, 545 P.2d 921, 922 (1976). It is not enough merely to set in motion the mechanics of giving notice. *School District RE–11J v. Norwood*, 644 P.2d 13, 15 (Colo.1982).

Since Martinez did not receive timely actual delivery under any theory, the real question before the court is whether the notice requirement of AS 14.20.140(b) may be satisfied by substantial compliance. The court answers the question in the affirmative, but I believe the application of this doctrine is unwise in this situation.

Substantial compliance with the notice provision involves conduct which falls short of strict compliance with the statutory deadline, but which affords a nontenured teacher the same protection that strict compliance would offer. The use of substantial compliance creates uncertainty by injecting collateral issues, thereby ignoring the legislature's attempt to create a clean cutoff date for notice of nonretention. The court's reasoning relies on the fortuity of an intervening weekend to deprive Martinez of her statutory right to receive timely notice of nonretention.

The superior court found, and the court agrees, that the notice requirement was intended to allow a nonretained teacher

1. It should be noted that in none of these decisions did a court hold that actual delivery on one date is constructive delivery on an earlier date.

ample opportunity to seek alternative employment. Carrying this reasoning to its logical extreme, a school board would be in substantial compliance with AS 14.20.140(b) so long as the teacher received notice prior to missing an employment opportunity for the following year. She could receive notice on the last day of the term, three days later, or at any time which the court feels gives her enough time to find another job. This renders meaningless the statutory deadline.[2]

Furthermore, the superior court heard no evidence on the time required to deliver a registered letter. Although a court has discretion to take judicial notice of a fact which is "not subject to reasonable dispute in that it is either (1) generally known within this state or (2) capable of accurate and ready determination," Alaska R.Evid. 201, it approaches absurdity to conclude that mail delivery times fall within this category. Therefore, this is not an appropriate fact of which to take judicial notice.

I would therefore address the issue whether Martinez was a "teacher" within the terms of AS 14.20.140(b), and, if so, whether she intentionally avoided delivery on the last day of school, thereby excusing the District's failure to provide timely notice. *School District RE–11J,* 644 P.2d 13, 16 (Colo.1982); *State ex rel. Sights v. Edwards,* 228 Ind. 13, 88 N.E.2d 763, 765 (1949); *Welo,* 545 P.2d at 922 n. 3.

**2.** The United States Supreme Court recently addressed the issue of substantial compliance with statutory deadlines.

> A final statutory question must be resolved before we turn to the constitutional holding of the District Court. Relying primarily on *Hickel v. [Oil Shale] Corp.,* 400 U.S. 48 [91 S.Ct. 196, 27 L.Ed.2d 193] (1970), the District Court held that, even if the statute required a filing on or before December 30, appellees had "substantially complied" by filing on December 31. We cannot accept this view of the statute.
> The notion that a filing deadline can be complied with by filing sometime after the deadline falls due is, to say the least, a surprising notion, and it is a notion without limiting principle. If 1-day late filings are acceptable, 10-day late filings might be equal-

> ly acceptable, and so on in a cascade of exceptions that would engulf the rule erected by the filing deadline; yet regardless of where the cutoff line is set, some individuals will always fall just on the other side of it. Filing deadlines, like statutes of limitations, necessarily operate harshly and arbitrarily with respect to individuals who fall just on the other side of them, but if the concept of a filing deadline is to have any content, the deadline must be enforced. "Any less rigid standard would risk encouraging a lax attitude toward filing dates," *United States v. Boyle,* 469 U.S. [——] at —— [105 S.Ct. 687, 693, 83 L.Ed.2d 622, 630 (1985) ] A filing deadline cannot be complied with, substantially or otherwise, by filing late—even by one day.

*United States v. Locke,* —— U.S. ——, ——, 105 S.Ct. 1785, 1796, 84 L.Ed.2d ——, —— (1985).