**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**OCT 15 2003**

**PATRICK FISHER**
**Clerk**

PUBLISH

## UNITED STATES COURT OF APPEALS

## TENTH CIRCUIT

---

EXXON MOBIL CORPORATION,
f/k/a Exxon Corporation; and TOSCO
CORPORATION,

      Plaintiffs - Appellants,

    v.

GALE NORTON, Secretary of the
Interior; DEPARTMENT OF
INTERIOR; KATHLEEN CLARKE,
Director of the Bureau of Land
Management, United States
Department of Interior; DOUGLAS M.
KOZA, Associate Director of the
Colorado State Office of the Bureau of
Land Management,

      Defendants - Appellees. *

No. 02-1344

---

### APPEAL FROM THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF COLORADO
### (D.C. NO. 00-M-2524 (PAC))

---

James A. Clark, Baker & Hostetler, LLP, Denver, Colorado, for Plaintiff-
Appellant Exxon Mobil Corporation, and Donald L. Morgan, Cleary, Gottlieb,
Steen & Hamilton, Washington, D.C., for Plaintiff-Appellant TOSCO
Corporation.

---

*Pursuant to Fed. R. App. P. 43(c)(2), Gale Norton is substituted for Bruce
Babbitt, Kathleen Clarke is substituted for Thomas Fry, and Douglas M. Koza is
substituted for Ann Morgan as the appellees in this action.

Ellen J. Durkee, Attorney, Environment & Natural Resources Division, Department of Justice, Washington, D.C. (Thomas L. Sansonetti, Assistant Attorney General, Washington, D.C.; Katherine Hazard, Attorney, Environment & Natural Resources Division, Department of Justice, Washington, D.C.; Lyle Rising, Office of the Solicitor, Lakewood, Colorado; and Karen Hawbecker, Office of the Solicitor, Washington, D.C., with her on the briefs), for Defendants-Appellees.

---

Before **TACHA,** Chief Judge, and **ANDERSON** and **BRISCOE** , Circuit Judges.

---

**ANDERSON** , Circuit Judge.

---

Plaintiffs Exxon Mobil Corporation and TOSCO Corporation appeal the district court's judgment affirming the Interior Board of Land Appeals ("IBLA") decision invalidating their thirty-two unpatented oil shale mining claims. The IBLA concluded that the claims were null and void because plaintiffs had failed to substantially perform the assessment work required by statute. We affirm.

## BACKGROUND

Exxon has twenty and TOSCO has twelve unpatented oil shale mining claims located in the Piceance Creek Basin in Garfield County, Colorado. Exxon and TOSCO acquired these claims from their previous owners, who had located them prior to February 25, 1920, in accordance with the General Mining Law of 1872, 30 U.S.C. §§ 21-54.

That law, "premised on a policy of encouraging exploration of valuable mineral deposits in the western United States . . . . provides that one who claims a mineral deposit is known as a 'locator' and is required to perform a certain amount of work each year in prosecution of the claim site, known as the 'location.'" Cliffs Synfuel Corp. v. Norton, 291 F.3d 1250, 1252-53 (10th Cir. 2002). That annual work requirement, called assessment work, is described in the 1872 Law as follows:

> On each claim located after the 10th day of May 1872, and until a patent has been issued therefor, not less than $100 worth of labor shall be performed or improvements made during each year.

30 U.S.C. § 28. The Mining Law further contained a provision stating that if a claimant failed to perform the required assessment work for a period of time but later resumed such work before someone else asserted a claim to the same land, the original claimant did not lose his claim. This provision became known as the "resumption doctrine":

> [U]pon a failure to comply with these conditions, the claim or mine upon which such failure occurred shall be open to relocation in the same manner as if no location of the same had ever been made, provided that the original locators, their heirs, assigns, or legal representatives, have not resumed work upon the claim after failure and before such location.

Id.; see also Cliffs Synfuel, 291 F.3d at 1253.

With the passage of the Mineral Leasing Act in 1920, Congress "completely changed the national policy over the disposition of oil shale lands." Hickel v. Oil

-3-

Shale Corp., 400 U.S. 48, 51 (1970). Those lands "were no longer open to location and acquisition of title but only to lease." Id. The Act contained a savings clause, however, which provided that oil shale claims in existence as of February 25, 1920, remained intact, and could pass into private ownership as before, as long as they were "thereafter maintained in compliance with the laws under which initiated . . . ." 30 U.S.C. § 193. "Thus, if one had a claim that existed prior to February 25, 1920, the claimant would not be required to lease the claimed land from the government, but could perfect title to it so long as the claim was maintained pursuant to pre 1920 law." Cliffs Synfuel, 291 F.3d at 1254.

With that general background in mind, we turn to the particular facts of plaintiffs' claims. Exxon's twenty claims were located by its predecessor-in-interest on December 1, 1919. Exxon purchased those twenty claims and fifty-two others on February 2, 1966, for $100.00. TOSCO's twelve claims were located by its predecessor-in-interest on December 16, 1917. TOSCO purchased them on April 23, 1979 for $9,562.10.

Exxon filed a patent application for its claims in January 1984. TOSCO filed its patent application in June 1985. On June 15, 1989, the Department of the Interior ("DOI") determined that Exxon had complied with the initial paperwork requirements of the Mineral Leasing Act and issued First Half of Mineral Entry

-4-

Final Certificates ("FHFC"s). [1] On July 27, 1988, DOI issued FHFCs for TOSCO's claims. Issuance of those FHFCs relieved plaintiffs of the obligation to perform further assessment work. See Silver Crystal Mines, Inc. , 147 I.B.L.A. 146, 149 (1999). DOI continued to investigate the validity of the claims, however, and on May 3, 1995, the Bureau of Land Management ("BLM") initiated a contest of Exxon's claims and on May 25, 1995 initiated a contest of TOSCO's claims.

The two contest complaints were consolidated for a hearing before an Administrative Law Judge ("ALJ"). The ALJ issued a decision on January 9, 1998, holding, *inter alia* , that plaintiffs' claims were invalid because plaintiffs failed to comply substantially with the annual assessment work requirement of 30 U.S.C. § 28. [2] More specifically, the ALJ concluded that TOSCO had failed to perform the required assessment work on its claims for the years 1929 through 1931, 1933 through 1957, and 1960 through 1974, with the exception that no assessment work was required for six of the claims in 1935 because a notice of

[1]The issuance of an FHFC is "the DOI's administrative recording of an applicant's compliance with the initial paperwork requirement of the Mining Law. But, a patent is not issued until there has been a determination that the claim is valid." Independence Mining Co. v. Babbitt, 105 F.3d 502, 506 (9th Cir. 1997).

[2]The BLM complaints also charged that plaintiffs' claims were invalid because none of them contained a discovery of a valuable mineral deposit, a necessity for a valid mining claim. See 30 U.S.C. § 22. The ALJ rejected the BLM's challenge, finding that plaintiffs' claims satisfy the discovery test.

-5-

intent to hold those claims was filed for that year. The ALJ found that TOSCO did satisfy the assessment work requirement for the years 1975 through 1987.

The ALJ found that, with respect to Exxon's claims, annual assessment work was required from 1919 to 1988, with the exception of 1932. The ALJ concluded that assessment work had been done for each of Exxon's claims in 1957, 1958, 1964 and 1966, and that assessment work had been done for a one-year period on approximately ten claims sometime between 1967 and 1972. Except for those time periods, the ALJ determined that no other assessment work had been done on Exxon's claims between 1920 and 1972. Exxon filed affidavits stating that it had performed assessment work for the years 1973 through 1988, but the ALJ determined that it was non-qualifying road maintenance work.

Exxon and TOSCO appealed the ALJ's decision to the IBLA. The IBLA affirmed the ALJ's decision, for substantially the same reasons as the ALJ. Thus, the IBLA concluded that plaintiffs had failed to substantially satisfy the assessment work requirement of 30 U.S.C. § 28. [3]

Plaintiffs sought review of the IBLA's decision in the federal district court. They argued that 30 U.S.C. § 28, which created the assessment work obligation,

---

[3]The IBLA set aside the ALJ's decision with respect to the discovery issue, on the ground that it was unnecessary to reach it given its determination that the claims were void for failure to substantially comply with the assessment work requirement.

also included the resumption doctrine and that their asserted resumption of assessment work prior to the government's challenge cured their prior lapse in assessment work. Plaintiffs also argued that the DOI's own regulations at the time had recognized the resumption doctrine and that the government is estopped from retroactively denying them the benefit of those regulations. The district court rejected this argument. Exxon Mobil Corp. v. Norton, 206 F. Supp. 2d 1085, 1089 (D. Colo. 2002). The court further found that there was sufficient evidence in the record supporting the IBLA's holding that there was a substantial lapse in assessment work. Finally, the district court rejected plaintiffs' estoppel claim, as well as their arguments that their due process and equal protection rights were violated. It declined to rule on the ALJ's decision regarding discovery.

Plaintiffs appeal, arguing, as they did below, that, despite the non-performance of assessment work decades earlier, they resumed assessment work prior to the government's challenge to the validity of their claims, in reliance upon two Supreme Court decisions and DOI regulations following those decisions which: (a) provided that such resumption preserved the validity of a claim and (b) until 1972, provided that the United States "had no interest in whether assessment work was performed at all." Plaintiffs-Appellants' Br. at 2. Thus, they argue that the IBLA's decision violates due process and equal protection principles "in view of settled law . . . enunciated in unanimous Supreme Court

decisions, Interior's regulations, and Interior's practices in patenting other oil shale claims with similar apparent lapses in work." Id. Plaintiffs also allege that DOI failed to establish by clear and convincing evidence that assessment work had not been done in prior decades and failed to establish that plaintiffs did not in fact substantially comply with the assessment work requirement. Finally, they argue that DOI erred in determining that certain road maintenance work performed by Exxon was not qualifying assessment work; that their performance of at least $500 worth of work per claim satisfies the substantial compliance requirement; and that the IBLA decision was erroneously premised on the idea that the resumption doctrine no longer exists.

## DISCUSSION

"'[I]n reviewing a district court's review of an agency decision, the identical standard of review is employed at both levels; and once appealed, the district court's decision is accorded no particular deference.'" Cliffs Synfuel , 291 F.3d at 1256-57 (quoting Valley Camp of Utah, Inc. v. Babbitt , 24 F.3d 1263, 1267 (10th Cir. 1994)) (further quotation omitted). Further, the Administrative Procedure Act applies, under which:

> in reviewing the underlying agency decision denying [plaintiffs']
> application[s] for . . . patent[s], the standard is whether the agency's
> decision was "arbitrary, capricious, an abuse of discretion, or
> otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). "The

-8-

duty of a court reviewing agency action under the 'arbitrary or capricious' standard is to ascertain whether the agency examined the relevant data and articulated a rational connection between the facts found and the decision made."

Id. at 1257 (quoting Olenhouse v. Commodity Credit Corp., 42 F.3d 1560, 1574 (10th Cir. 1994) (footnote omitted)). When we review the agency's explanation, we must decide "'whether the agency considered all relevant factors and whether there has been a clear error of judgment.'" Id. (quoting IMC Kalium Carlsbad, Inc. v. Interior Bd. of Land Appeals, 206 F.3d 1003, 1012 (10th Cir. 2000)) (further quotation omitted). The Supreme Court has cautioned that "the ultimate standard of review is a narrow one." Citizens to Preserve Overton Park, Inc. v. Volpe, 401 U.S. 402, 416 (1971); see also Cliffs Synfuel, 291 F.3d at 1257. In sum, "we review the IBLA's decision to determine whether it was supported by substantial evidence and was not arbitrary or capricious," or was not in accordance with the law. IMC Kalium Carlsbad, 206 F.3d at 1010.

## I. Due Process/Retroactivity/Equal Protection

Plaintiffs' first argument is that the IBLA's decision violated their due process rights by retroactively barring them from relying upon valid Supreme Court decisions and DOI regulations following those decisions when they invoked the resumption doctrine to preserve their claims prior to the government's challenge to the validity of those claims. As indicated, the General Mining Law

of 1872 required "[o]n each claim located . . . not less than $100 worth of labor . . . or improvements . . . each year . . . ." 30 U.S.C. § 28. Under the savings clause of the 1920 Act, claims, like those of plaintiffs, located prior to the enactment of the Act could be subject to patent and therefore private ownership rather than only leasehold if "thereafter maintained in compliance with the laws under which initiated." 30 U.S.C. § 193.

Initially, the Supreme Court suggested that, while a claimant is required to perform the $100 of annual assessment work, "failure to do so does not ipso facto forfeit the claim, but only renders it subject to loss by relocation." Wilbur v. United States *ex rel.* Krushnic, 280 U.S. 306, 317 (1930). However, the Court stated that "the law is clear that no relocation can be made if work be resumed after default and before such relocation." Id.; see also Cliffs Synfuel, 291 F.3d at 1258 (noting that "even after the enactment of the Mineral Leasing Act, an owner of a pre 1920 oil shale claim was under no obligation to perform the requisite assessment work on an annual basis so long as they were able to avail themselves of the resumption doctrine before the claim was relocated by a subsequent claimant") (citing Krushnic, 280 U.S. at 317). The Court further suggested that the annual assessment work requirement "'was not necessary to preserve the possessory right . . . as against the United States, but only as against subsequent relocators. So far as the government was concerned, failure to do assessment

-10-

work for any year was without effect.'" Ickes v. Virginia-Colorado Dev. Corp.,
295 U.S. 639, 645 (1935) (quoting Krushnic, 280 U.S. at 317). Thus, as of 1935,
it appeared that the United States had no interest in enforcing the assessment
work requirement, and resumption of assessment work before a challenge could
"cure" any default in the performance of such work. Plaintiffs argue that they
relied upon those decisions, and DOI regulations following them, in failing to
perform annual assessment work for decades.

As we observed in Cliffs Synfuel, "[t]he Court radically altered these two
concepts in re-examining the Leasing Act's effect on pre-1920 oil shale claims"
in Hickel v. Oil Shale Corp., 400 U.S. 48 (1970):

> The Court first rejected its earlier formulations that had declared the
> government to be a disinterested party, unable to assert rights to a
> pre-1920 oil shale claim upon which assessment work had been
> discontinued. It stated that "if we assume, *arguendo*, that failure to
> do assessment work as provided in the 1872 Act concerned at the
> time only the claimant and any subsequent relocator, the United
> States, speaking through the Secretary of the Interior, became a
> vitally interested party by reason of the 1920 Act."

Cliffs Synfuel, 291 F.3d at 1258-59 (quoting Hickel, 400 U.S. at 53). As the
Hickel Court further explained:

> If we were to hold to the contrary that enforcement of the assessment
> work of § 28 was solely at the private initiative of relocators, the
> "maintenance" provision of § 37 becomes largely illusory, because
> relocation of oil shale claims became impossible after the 1920 Act.
> So if enforcement of the assessment work requirement of § 28 were
> dependent solely on the activities and energies of oil shale relocators,
> there was no effective enforcement device.

-11-

Hickel , 400 U.S. at 56.

In reviewing its prior decisions in Krushnic and Virginia-Colorado , the Court in Hickel largely confined them to their facts, agreeing with their specific holdings that "every default in assessment work does not cause the claim to be lost."[4] Id. at 57. Stating that "[d]efaults . . . might be the equivalent of abandonment[,]" however, the Court specifically held "that token assessment work, or assessment work that does not substantially satisfy the requirements of 30 U.S.C. § 28, is not adequate to 'maintain' the claims within the meaning of § 37 of the Leasing Act." Id. Characterizing the broad language of Krushnic and Virginia-Colorado as dicta, the Court concluded that "they must be confined to situations where there had been substantial compliance with the assessment work requirements of the 1872 Act, so that the 'possessory title' of the claimant, granted by 30 U.S.C. § 26, will not be disturbed on flimsy or insubstantial grounds." Id. Further, the Court made it clear that upon default in the performance of assessment work, the United States was the beneficiary: "While the objective of the 1872 Act was to open the lands 'to a beneficial use by some

---

[4]Both Krushnic and Virginia-Colorado involved brief defaults in the performance of assessment work. In Krushnic, the claimant defaulted for one year and then resumed work before the United States challenged the claim. In Virginia-Colorado, the claimant had defaulted for a similar time period, but had stated its intention to resume assessment work and had made plans to do so when the United States challenged claim.

other party,' once the original claimant defaulted, the defeasance inevitably accrued to the United States, owner of the fee." Id. at 55. Indeed, "§ 37 of the 1920 Act makes the United States the beneficiary of all claims invalid for lack of assessment work or otherwise." Id. at 57. [5]

In Cliffs Synfuel, we discussed and applied Hickel to a case very similar to this case. Claimants in Cliffs Synfuel had performed assessment work from 1918 until 1930 and had resumed such assessment work from 1977 until 1992, prior to any challenge by the United States, but "no assessment work was performed

---

[5]Prior to Hickel, applicable regulations tracked the Krushnic and Virginia-Colorado language that defaults in performance of the annual assessment work were a matter of concern only to third parties or rival locators, not the United States. In 1972, DOI amended its regulations to reflect Hickel's holding. Thus, they provide that a mining claimant's failure "to comply substantially with the requirement" of the annual assessment work "will render the claim subject to cancellation. " 43 C.F.R. § 3851.3(a). In 1993, the Department added that "failure to perform the assessment work . . . causes the interest of the claimant(s) in the minerals subject to the mining laws to revert back to the public domain." 43 C.F.R. § 3851.3(b).

In the Energy Policy Act of 1992, Congress modified the annual assessment work requirements for oil shale applicants who, unlike plaintiffs here, had not received FHFCs. The holder of a valid unpatented oil shale claim may retain an unpatented claim "by complying with the general mining laws of the United States . . . except that the claim holder shall no longer be required to perform annual labor, and instead shall pay to the Secretary $550 per claim per year . . . commencing with calendar year 1993." 30 U.S.C. § 242(c)(3), (e)(2). Additionally, the applicant may only receive a patent for the oil shale and associated minerals, while title to the surface and all other minerals remains in the United States. 30 U.S.C. § 242(c)(1).

-13-

during the 46-year period stretching from July 1, 1931 to September 1, 1977."

Cliffs Synfuel, 291 F.3d at 1260. We explained our view of Hickel as follows:

From the Court's statement "that *every* default in assessment work does not cause the claim to be lost," it logically follows that in each case we must consider the quantum of the actual assessment work performed and the length of time the claimant failed to meet the annual assessment work required by the Mining Act of 1872.

Id. at 1259 (quoting Hickel, 400 U.S. at 57). We compared the facts of Hickel, where the Court found the claimants had not substantially complied with the assessment work requirement, with those of Krushnic and Virginia-Colorado, where the Court found the claimants had substantially complied with the assessment work requirement. Noting that in Hickel, "[a]nnual assessment work had basically ceased prior to the 1930's as well as in the twenty years thereafter," id., as compared with the brief, one-year defaults in Krushnic and Virginia-Colorado, we concluded that the facts in Cliffs Synfuel "are decidedly more similar to the situation which confronted the Court in Hickel, rather than in Krushnic or Virginia-Colorado." Id. at 1260. We concluded that "[u]nder these circumstances our decision is driven by the facts and reasoning set forth in Hickel." Id.

-14-

Significantly, while we did not hold that the resumption doctrine is completely inapplicable to oil shale claims, we explained its limits. [6] The claimant in Cliffs Synfuel had argued that its resumption of assessment work in 1977, after a 46-year period of inactivity, but prior to any challenge to the validity of its claim by the United States, had revived its claim. We held it did not:

> On the basis of Hickel's teachings, we conclude that the 46 years of inaction on Appellee's claims reflects "token assessment work, or assessment work that does not substantially satisfy the requirements of 30 U.S.C. § 28. . . ." Therefore, in this case, "the 1920 Act makes the United States the beneficiary of all claims invalid for lack of assessment work or otherwise."

Id. at 1261 (quoting Hickel, 400 U.S. at 57). We went on to state:

> In so concluding, we perforce reject Appellee's suggestion that its assessment work, which took place from 1977 through 1992, offsets the previous 46 years of dereliction and restores a legitimate right to the claims by constituting more than "token assessment work." The short answer to this is that by appropriate analogy, this argument was rejected by the Court in Hickel when it noted that a decades-long lapse on assessment work "might be the equivalent of abandonment. . . ." Applying the rationale of the Court, we hold that prior to 1977 Appellee's "default in doing the assessment work . . . ma[de] the United States the beneficiary of all claims invalid for lack of assessment work" long before it resumed assessment work in 1977. Appellee's activity that began in 1977 was too little, too late.

Id. (quoting Hickel, 400 U.S. at 57).

---

[6]Plaintiffs argue that we should reverse the IBLA decision because it "was premised on the erroneous notion that the right to preserve a claim by resuming work no longer exists." Plaintiffs-Appellants' Br. at 3. We see no such basis for reversing the IBLA's decision.

We hold that the rationale and facts of Hickel and Cliffs Synfuel compel the same result in this case. Assuming substantial evidence supports the ALJ's finding that plaintiffs failed to perform the required assessment work for several decades (in Exxon's case, many decades), that "'default in doing the assessment work . . . ma[de] the United States the beneficiary of all claims invalid for lack of assessment work'" despite any claimed resumption in the 1970s prior to the government's challenge to the validity of plaintiffs' claims. Id.

Plaintiffs attempt to avoid the sweep of Hickel and Cliffs Synfuel by arguing that those cases did not address the due process retroactivity argument plaintiffs press upon us here. We disagree. It is implicit in both the Supreme Court's decision in Hickel and our court's decision in Cliffs Synfuel that neither court was troubled by the fact that DOI regulations suggested that resumption of assessment work prior to a challenge preserved a claim and that, until 1972, the United States had no interest in whether assessment work was performed. To the extent plaintiffs argue they were entitled to rely upon Krushnic and Virginia-Colorado, the Supreme Court in Hickel in 1970 confined those cases to their particular facts (upholding the validity of claims where assessment work was resumed after a one-year lapse in the performance of such work) and made it clear that the United States was interested in the enforcement of the assessment work requirements, and indeed was the beneficiary of an abandoned claim, as a matter

-16-

of statutory interpretation. In short, our decision in Cliffs Synfuel, interpreting and applying Hickel, dictates the conclusion we reach here–that plaintiffs' claims are invalid for failure to substantially comply with the annual assessment requirement, and that they became invalid long before plaintiffs resumed, or attempted to resume, assessment work, provided we find substantial evidence supports the ALJ's findings on the quantum of assessment work performed.[7] We turn therefore to that issue.

## II. Substantial Compliance with Annual Assessment Requirement

Plaintiffs argue: (1) DOI failed to "establish by clear and convincing evidence that work had not been done in long-past years," Plaintiffs-Appellants' Br. at 3; (2) DOI erroneously disqualified as assessment work road-maintenance work performed by Exxon; (3) plaintiffs satisfied the substantial compliance requirement of Hickel; and (4) plaintiffs' performance of $500 worth of work per

---

[7]Plaintiffs also argue that the determination that their claims are invalid, while other claims they assert are similarly situated to theirs have gone to patent during this same general time period, violates their equal protection rights. We disagree. Assuming the other claimants whom plaintiffs assert have received patents are in fact similarly situated, a fact of which we have no proof, enforcement of the annual assessment work requirement furthers a legitimate governmental interest. See Grigsby v. Barnhart, 294 F.3d 1215, 1220 (10th Cir. 2002).

claim, which is required to qualify for issuance of a patent, satisfies the assessment work requirement.

"[F]orfeiture of a mining claim for failure to do annual labor must be established by clear and convincing proof that the former owner has failed to have performed the required work or made the necessary improvements." United States v. Herr, 130 I.B.L.A. 349, 358 (1994). In reviewing the IBLA's application of that standard, we must determine whether its conclusion that there was clear and convincing proof that plaintiffs had failed to perform the required assessment work was arbitrary, capricious or an abuse of discretion, or is unsupported by sufficient evidence in the record. We hold that it was not arbitrary, capricious, or an abuse of discretion, and enjoys sufficient evidentiary support in the record.

Plaintiffs argue the IBLA's decision upholding the ALJ is supported by nothing more than speculation and conjecture. After carefully reviewing the administrative record, we disagree with that assertion. The ALJ reviewed reports prepared by mining engineers and examiners who conducted on-site inspections, reviews and interviews in 1928, 1931, 1984, 1986, 1993 and 1995. Mineral

-18-

reports were prepared on both plaintiffs' patent applications. Aerial photographs taken at various times were examined. [8]

While plaintiffs assert that the ALJ simply made unfounded speculations about decades-old activities, we view the ALJ's analysis, affirmed by the IBLA, as articulating a rational connection between the facts found and the decision made. [9]

Plaintiffs argue that the possibility of erosion, revegetation, and other natural forces makes it extremely difficult to accurately assess the condition of the terrain, particularly any assessment work done in prior years. The ALJ

---

[8]Aerial photographs of the Exxon claim group were taken in 1954, 1962, 1966, 1967, 1973, 1979, 1980, and 1981. ALJ Decision at 14, Deferred Jt. App. at 2561.

[9]The ALJ found as follows with respect to TOSCO's claims:

> With the exception of core hole drilling in 1958 and/or 1959, evidence of assessment work for the period of 1929 through 1974 was not found by the examiners either in the records or on the claims. [BLM mining engineer and mineral examiner] Mr. Ginouves noticed surface disturbances, including trails, in a 1954 aerial photograph of the claim group, but attributed their existence to various grazing improvements and activities. The improvements consisted of fencelines, stock-watering catchments, and betterments to natural springs. The location and termination points of the trails revealed their association with use of these improvements. A comparison of aerial photographs from 1954, 1962, and 1978 indicated that most of the road network and many of the grazing improvements were in place as early as 1954, and that very few additional disturbances are visible in the 1962 and 1978 photos.

ALJ Decision at 11, Deferred Jt. App. at 2558.

explained, however, why DOI examiners were able to accurately evaluate the assessment work despite the undeniable influence of weather on the terrain:

> While erosion, revegetation, and vegetation density are factors adversely affecting a field examiner's ability to locate assessment work, the Departmental examiners were thorough in their examination and have shown that small excavations dating back to the 1920's (the pits on the TOSCO claims and those nearby but outside of the Exxon claim group) can be located with a high degree of success.

ALJ Decision at 49, Deferred Jt. App. at 2596. Moreover, as we have stated, "[t]he IBLA may draw reasonable inferences from the evidence." IMC Kalium Carlsbad , 206 F.3d at 1011. The ALJ recognized the possibility that work done long ago on the TOSCO claims might be difficult to detect, but he concluded that the evidence supported the conclusion that "such work, under the circumstances, likely was not performed and would not be qualifying in nature":

> Those circumstances include the absence of any evidence of excavations, drill holes, or other mining activity for the assessment years ending in 1929 through 1957 and the assessment years ending in 1960 through 1974, the lack of economic incentive to develop the claims, and the fact that most of the trails and roads are likely associated with improvements and activities related to grazing rather than mining. For these periods, there is no evidence of mining activity, and little evidence of the likelihood thereof, which might necessitate road maintenance to allow access.

ALJ Decision at 45, Deferred. Jt. App. at 2592.

Plaintiffs argue further that the ALJ and IBLA were "hyper-technical" in their approach to plaintiffs' claim that their development of water sources and

-20-

rights should be considered assessment work. The ALJ and IBLA rejected the water work as qualifying assessment work:

> [Plaintiffs'] efforts to develop an economically viable oil shale industry have little, if any, relevance in determining whether compliance with the assessment work has been sufficiently substantial to demonstrate a diligent good faith effort to develop <u>the specific mining claims being contested</u>. A claimant may show no inclination or effort to develop a particular set of claims and yet display a keen interest in expending time and money to develop a viable industry for recovering the mineral which happens to exist on those and many other claims. While some of the expenditures relating to the acquisition and development of water sources and rights relate more directly to these particular claims, the water is not needed for extraction of the oil shale but for retorting and other processes. It therefore does not qualify as assessment work. Further, because these water expenditures benefit other nearby patented claims held by [plaintiffs], their tendency to show the good faith of [plaintiffs] in developing the contested claims is slight at best.

ALJ Decision at 41-42, Deferred Jt. App. at 2588-89 (citation omitted).

Having carefully reviewed the record, we cannot say that the ALJ's careful and thorough decision, affirmed by the IBLA, concluding that DOI had demonstrated by clear and convincing evidence that plaintiffs had not substantially complied with the annual assessment work requirement, is arbitrary or capricious, and we find it has adequate support in the record.

Plaintiffs make several more specific arguments, which we address in turn. Exxon argues the IBLA erred in disqualifying as assessment work certain road work it performed. For the years 1973 through 1988, with the possible exception of the year 1974, Exxon filed affidavits stating that it did assessment work of at

-21-

least $100 per claim. It is undisputed that the work was done. It was exclusively road maintenance work, which the ALJ and the IBLA held was not qualifying assessment work. All parties agree that road maintenance work can qualify as assessment work, provided it is done "for the purpose of better developing and operating" the claim. United States v. 9,947.71 Acres of Land, 220 F. Supp. 328, 332 (D. Nev. 1963) (further quotation omitted); accord Silliman v. Powell, 642 P.2d 388, 393 (Utah 1982) ("Road work that directly facilitates the extraction of minerals from claims clearly qualifies as assessment work."). The IBLA rejected Exxon's road maintenance as qualifying assessment work:

> There is not one shred of evidence that the purpose of the road maintenance was to facilitate development of the claims. Unlike the nearby oil and gas road, the poor roads leading to and traversing the claims were not improved to allow passage of heavy equipment necessary for drilling or other development activity, but rather, they were merely maintained. The roads do not lead to any excavations or other mining activity performed or planned subsequent to 1973 because there have been none.

United States v. TOSCO Corp., 153 I.B.L.A. 205, 209 (2000) (quoting ALJ Decision at 49, Deferred Jt. App. at 2596). That conclusion is not arbitrary or capricious and is supported by substantial evidence in the record.

Plaintiffs also argue that their performance of $500 worth of work per claim, which 30 U.S.C. § 29 requires for the issuance of a patent, satisfies the annual assessment work requirement of 30 U.S.C. § 28. The ALJ, the IBLA, and the district court all rejected this argument, as do we. As the ALJ explained,

-22-

§§ 28 and 29 "serve two distinct purposes and have distinct minimum standards." ALJ Decision at 40, Deferred Jt. App. at 2587. The $100 annual assessment requirement is "to assure that a claimant undertakes a diligent good faith effort to develop the mining claim, and to prevent the location of mining claims for speculative purposes." Id. The $500 requirement before issuance of a patent exists because "Congress believed that the expenditure of that amount of money, whether in 1 year or 5 years, would demonstrate a claim's value as a mine." Id. We have never suggested that there is a $500 cap on the annual assessment work requirement. See Cliffs Synfuel, 291 F.3d at 1261 (implicitly requiring assessment work totaling more than $500); see also Andrus v. Shell Oil Co, 446 U.S. 657, 658 n.1 (1980) ("The mining law also provides that until a patent is issued a claimant must perform $100 worth of labor or make $100 of improvements on his claim during each year . . . .") (emphasis added). In short, we agree that the $500 worth of work requirement is separate from and does not satisfy the statutory obligation to perform $100 worth of work each year on each claim.

For the foregoing reasons, we AFFIRM the district court's decision.