Ramona Little Eagle OSBORNE, Mattie Osborne Fish, Carol Louise Nuttle, William Frank Nuttle and Lamont Osborne, Plaintiffs–Appellants,

v.

Bruce BABBITT, Secretary of the Department of the Interior, and Patricia Ann Eaves, Defendants–Appellees.

No. 94–5134.

United States Court of Appeals, Tenth Circuit.

Aug. 1, 1995.

---

Sandra Lefler Cole (Brian S. Kuhlmann with her on the briefs), Tulsa, OK, for appellants.

Cathryn McClanahan, Office of U.S. Atty., Tulsa, OK, for appellees.

Stephen C. Lewis, U.S. Atty., Kathleen Bliss and Peter Bernhardt, Asst. U.S. Attys., N.D. OK, Tulsa, OK, on the brief, for appellees.

---

* The Honorable Wesley E. Brown, Senior District Judge, United States District Court for the District of Kansas, sitting by designation.

1. The ALJ properly turned to state law to determine the heirs to decedent's allotment. *See* 25

Before TACHA and BRORBY, Circuit Judges, and BROWN *, Senior District Judge.

TACHA, Circuit Judge.

## I.  Background

This case involves the determination of the heirs of Abbie Effie Little Eagle Osborne, a full-blood Pawnee Indian who died intestate. At the time of her death, Ms. Osborne owned allotted lands held in trust by the United States. *See* 25 U.S.C. §§ 331–358.

Pursuant to its authority under 25 U.S.C. § 372, the Department of Interior (DOI) conducted Indian probate proceedings to ascertain Ms. Osborne's legal heirs.  As part of these proceedings, appellant Ramona Little Eagle Osborne, the decedent's daughter, completed an Affidavit of Family History. Ramona Osborne included appellee Patricia Ann Eaves among decedent's potential heirs by indicating that Eaves was the daughter of decedent's son, Roland G. Osborne, who predeceased decedent.  After returning the completed affidavit, Ramona Osborne subsequently attempted to change it by deleting Eaves's name from the list of decedent's family.  Ramona Osborne was advised to raise this issue at an evidentiary hearing, which was held on March 29 and April 2, 1990.

At the hearing, an administrative law judge (ALJ) heard evidence concerning whether Roland G. Osborne was, in fact, Eaves's father.  The ALJ concluded that Eaves was Roland's daughter and, consequently, decedent's granddaughter.  In his Order Determining Heirs dated January 17, 1991, the ALJ noted that the heirs were "determined in accordance with the laws of the State of Oklahoma."[1]  With regard to appellee Eaves, the order stated:

> The paternity of decedent's granddaughter, Patricia A. Eaves was questioned.  It appears from the record that she had been

---

U.S.C. § 348 ("[T]he law of descent and partition in force in the State or Territory where such lands are situate shall apply thereto.").

accepted as a member of the family, as a daughter of decedent's predeceased son, Roland G. Osborne even though she was born out of wedlock just 7 months before his death. In 1986, the decedent submitted a notarized statement to the Pawnee Business Council stating that Patricia A. Eaves was her granddaughter by her predeceased son, Roland Grant Osborne. Accordingly, I find and determine that Patricia A. Eaves is a granddaughter and heir of the decedent.

Appellants petitioned the ALJ for rehearing, alleging that the ALJ's order erroneously included Eaves among decedent's heirs.[2] On May 31, 1991, the ALJ issued his Order on Rehearing affirming his finding that Eaves's father was Roland G. Osborne. In that order, the ALJ expressly stated that, based on 25 U.S.C. § 371, Eaves would be treated as Roland Osborne's legitimate issue and thus was entitled to a share of decedent's estate.

Appellants appealed the ALJ's order to the DOI Board of Indian Appeals (BIA), which affirmed the ALJ's order. The BIA agreed with the ALJ that, under section 371, Eaves should be deemed decedent's legitimate issue for inheritance purposes. Appellants then sought judicial review of the agency's order in federal district court. The district court affirmed the BIA's order.

Appellants now appeal to this court. They contend that the agency erroneously construed the relevant statutes, 25 U.S.C. §§ 348 and 371, in its determination that Eaves is an heir of decedent, resulting in an "arbitrary and capricious ruling which constitutes an abuse of discretion and a result not in accordance with law." Appellants also contend that the agency applied the wrong standard of proof—preponderance of the evidence—to the factual question of whether Eaves is Roland Osborne's child, when it should have required clear and convincing evidence.

## II. Standard of Review

■ We examine the district court's review of an administrative agency's decision de novo. *See Bar MK Ranches v. Yuetter,* 994 F.2d 735, 738 (10th Cir.1993). As a court reviewing action by an administrative agency, we must "hold unlawful and set aside agency action, findings, and conclusions found to be [ ] arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A); *see also Board of County Comm'rs v. Isaac,* 18 F.3d 1492, 1496 (10th Cir.1994).

Appellants' contention that the DOI's decision in this case was arbitrary, capricious, and not in accordance with law is a challenge to the agency's interpretation of two federal statutes, 25 U.S.C. §§ 348 and 371. We review a challenge to an agency's interpretation of a statute by applying the two-step analysis enunciated by the Supreme Court in *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 842–43, 104 S.Ct. 2778, 2781, 81 L.Ed.2d 694 (1984). In a recent decision from this circuit, we explained the analysis required by *Chevron:*

> When reviewing an agency's interpretation of a statute it administers, we first determine whether the statute is unambiguous. If the intent of Congress is clear then we must give effect to that intent. The judiciary is the final authority on issues of statutory construction and must reject administrative constructions which are contrary to clear congressional intent. If, however, the statute is ambiguous or silent on the issue in question, we must determine whether the agency's determination is based on a permissible construction of the statute. If so, we will defer to the agency's interpretation.
>
> In determining the meaning of a statute, we look at not only the statute itself but also at the larger statutory context. We may ascertain the intent of Congress through statutory language and legislative history.

*Utah v. Babbitt,* 53 F.3d 1145, 1148 (10th Cir.1995) (internal quotation marks and citations omitted).

## III. Discussion

### A.

■ To determine the right of Eaves to inherit from decedent, we must construe two

---

**2.** The Petition for Rehearing also included other     grounds that are not relevant to this appeal.

relevant statutes, 25 U.S.C. §§ 348 and 371. Our analysis begins with the plain language of the statutes. *Johns v. Stewart,* 57 F.3d 1544, 1555–56 (10th Cir.1995). " 'Our task is to give effect to the will of Congress, and where its will has been expressed in reasonably plain terms, that language must ordinarily be regarded as conclusive.' " *Negonsott v. Samuels,* —— U.S. ——, ——–——, 113 S.Ct. 1119, 1122–23, 122 L.Ed.2d 457 (1993) (quoting *Griffin v. Oceanic Contractors, Inc.,* 458 U.S. 564, 570, 102 S.Ct. 3245, 3250, 73 L.Ed.2d 973 (1982)).

Section 348, enacted as part of the Indian General Allotment Act, 24 Stat. 388 (1887) (codified as amended in scattered sections of 25 U.S.C.), governs the issuance of patents to land held in trust by the United States. 25 U.S.C. § 348. It provides that the United States will hold the land in trust "for the sole use and benefit of the Indian to whom [the] allotment shall have been made, or, in case of his decease, of his heirs according to the laws of the State or Territory where such land is located." 25 U.S.C. § 348. State law thus determines, among other things, a decedent's heirs and the heirs' rights to inherit an allotment. *Id.*

Although section 348 mandates that state law generally govern questions of descent, section 371 is an express exception to that rule. Section 371 states:

> For the purpose of determining the descent of land to the heirs of any deceased Indian under the provisions of section 348 of this title, whenever any male and female Indian shall have cohabited together as husband and wife according to the custom and manner of Indian life the issue of such cohabitation shall be, for the purpose aforesaid, taken and deemed to be the legitimate issue of the Indians so living together, and every Indian child, otherwise illegitimate, shall for such purpose be taken and deemed to be the legitimate issue of the father of such child.

*Id.* § 371. Thus, section 371 mandates that certain individuals be "deemed legitimate" for inheritance purposes. Once it is determined that an individual is deemed a decedent's legitimate issue, section 348 dictates that state law controls the individual's inheritance rights. These rights include whether the individual, as a legitimate child, is entitled to inherit any part of an allotment.

Appellants nevertheless contend that section 371 does not apply to Eaves. They argue that section 371 applies only to a person who is the issue of "any male and female Indian [who] have cohabited together as husband and wife according to the custom and manner of Indian life." *Id.* In this case, there is no allegation that Roland Osborne cohabited with Eaves's mother according to the custom and manner of Indian life. Consequently, according to appellants, Eaves should not be deemed the "legitimate issue" of Roland Osborne, but instead should be considered a child born out of wedlock under Oklahoma law.[3]

Appellants interpret section 371 incorrectly. Section 371 clearly applies in two distinct circumstances. The first, as appellants agree, is when an Indian couple has cohabited together as husband and wife according to Indian custom. *See* 25 U.S.C. § 371. The children of such an Indian custom marriage are treated as the legitimate children of both the mother and the father. The statute also contains a second mandate: "*and* every Indian child, otherwise illegitimate, shall ... be taken and deemed to be the legitimate issue of the father of such child." *Id.* (emphasis added). The statute uses the word "and" to introduce the clause, indicating an additional application. Appellants' construction of the statute—that section 371 applies only to the children of couples who cohabited as husband and wife according to Indian custom—would render this second clause meaningless. "We will not construe a statute in a way that renders words or phrases meaningless, redundant, or superfluous." *Bridger Coal Co./ Pac. Minerals, Inc. v. Director, OWCP,* 927 F.2d 1150, 1153 (10th Cir.1991). Consequently, according to the plain language of

---

3. Oklahoma law allows a child born out of wedlock to inherit through her father in only four specified circumstances. *See* Okla.Stat. tit. 84, § 215. It is undisputed that none of the four alternatives were satisfied in this case. Thus, Eaves would not inherit through Roland Osborne under Oklahoma law.

section 371, Eaves—an "Indian child, otherwise illegitimate"—is deemed to be her father's legitimate issue for the purpose of determining the descent of land pursuant to section 348.[4]

### B.

■ Appellants next argue that Eaves has not proved that Roland Osborne is her father because she has not satisfied the requirements of Okla.Stat. tit. 84, § 215. Title 84, section 215 defines the circumstances under which a child born out of wedlock may inherit from her father under Oklahoma law. But legitimate children in Oklahoma inherit pursuant to section 213, not section 215. *See id.* § 213. Because 25 U.S.C. § 371 mandates that children who fall within its purview shall be deemed legitimate for inheritance purposes, requiring such children to comply with a state statutory provision relevant only to illegitimate children would clearly contravene congressional intent. Under section 371, once the ALJ determined as a factual matter that Roland Osborne was Eaves's father, Eaves was treated as if she was Roland's "legitimate issue." 25 U.S.C. § 371. Accordingly, Eaves did not have to prove she was entitled to inherit under Okla.Stat. tit. 84, § 215.

### C.

■ Appellants finally contend that the DOI (1) improperly allocated the burden of proof, requiring appellants to show that Roland Osborne was not Eaves's father, and (2) decided the issue using the wrong standard of proof. In their brief to this court, appellants allege that "[t]here is a question as to who [Eaves's] father is." But appellants previously conceded to the agency that Roland Osborne was Eaves's biological father.[5] In their appeal to the BIA, appellants' brief stated that they "have not made any specific

claim that Ms. Eaves is not Mr. Osborne's child, they have repeatedly made the claim that Ms. Eaves has not proved she is legally an heir of the decedent." In the same brief, appellants further argued that "this case does not specifically raise the issue of the biological paternity of [Eaves]." Although appellants now take a position different from their position in their BIA appeal, this court will not consider contentions not raised in the appropriate administrative proceedings. *Micheli v. Director, OWCP*, 846 F.2d 632, 635 (10th Cir.1988). Appellants have therefore waived a federal court appeal of the ALJ's factual finding that Roland Osborne was Eaves's father.

### IV. Appellees' Motion to Strike Appellants' Appendix

Appellees moved to strike appellants' appendix—containing the record on appeal—and the supplement materials submitted to this court with appellants' brief. Because none of the materials that appellees find objectionable were necessary to our disposition of the case, we deny appellees' motion.

### V. Conclusion

For the reasons stated in this opinion, the decision of the the DOI Board of Indian Appeals affirming the ALJ's Order on Rehearing is hereby **AFFIRMED.** In addition, appellees' motion to strike appellants' appendix and supplement materials is hereby **DENIED.**

---

4. Having determined that the meaning of sections 348 and 371 are clear from the words of the statutes themselves, we need not consider the legislative history of the General Allotment Act. *See United States Nat'l Bank v. Independent Ins. Agents of Am.*, —— U.S. ——, —— n. 11, 113 S.Ct. 2173, 2186 n. 11, 124 L.Ed.2d 402 (1993); *United States v. Hill*, 971 F.2d 1461, 1466 n. 9 (10th Cir.1992) (en banc). Similarly, because Congress's intent is clear and unambiguous, we need

not examine the agency's cases interpreting these statutes.

5. In their appeal to the BIA, appellants challenged both the burden of proof and the standard of proof to be applied in heirship determinations, but they made no such challenges to the question of Eaves's paternity.