**CLIFFS SYNFUEL CORP., a Utah corporation, Plaintiff,**

v.

**Bruce BABBITT, Secretary of the United States Department of the Interior; Thomas Fry, Acting Director, Bureau of Land Management, United States Department of the Interior; G. William Lamb, Director, Utah State Office, Bureau of Land Management, United States Department of the Interior; and the United States Department of the Interior, Defendants.**

No. 2:99CV0133–ST.

United States District Court, D. Utah, Central Division.

Jan. 29, 2001.

George M. Haley, Home Roberts Owen LLP, Salt Lake City, UT, Robert G. Pruitt, Jr., Michael S. Johnson, Pruitt Gushee & Bachtell, Salt Lake City, UT, Donald L. Morgan, Cleary Gottlieb Steen & Hamilton, Washington, DC, for Cliffs Synfuel Corp.

Donald L. Morgan, Cleary Gottlieb Steen & Hamilton, Washington, DC, for Crippled Horse Investments, Estate of Frederick H. Larson, Tosco Corp.

Jeffrey E. Nelson, U.S. Attorney's Office, Salt Lake City, UT, for Bruce Babbitt, Thomas Fry, G. William Lamb, Dept. of Interior.

## MEMORANDUM AND ORDER

STEWART, District Judge.

The issue before this court is whether the decision of the Interior Department's Interior Board of Land Appeals, ("IBLA"), captioned *United States v. Cliffs Synfuel Corp.*, IBLA 98–306 (the "IBLA Decision") is in error. The IBLA Decision is founded upon a prior IBLA decision, *U.S. v. John J. Herr, et al.*, IBLA 92–448, 101 I.D. 113 (1994), (the "*Herr* decision"). In *Herr*, the IBLA construed the United States Supreme Court decision in *Hickel v. Oil Shale Corporation*, 400 U.S. 48, 91 S.Ct. 196, 27 L.Ed.2d 193 (1970), (the "*Hickel* decision"), to have abrogated the resumption doctrine—codified at 30 U.S.C. § 28 (1986)—as to oil shale mining claims. Because the IBLA Decision ignores the literal language of 30 U.S.C. § 28, particularly that part which allows resumption of the rights under a mining claim when assessment work is recommenced, and because the IBLA Decision misinterprets the *Hickel* decision, this Court concludes that the IBLA Decision was arbitrary, capricious, an abuse of discretion, contrary to law, and otherwise an unreasonable interpretation of the statutes, regulations and Supreme Court jurisprudence of the United States of America.

## I. BACKGROUND

The Green River Formation, located in eastern Utah, is the site of potentially valuable oil shale deposits. Oil shale is defined as "fine-grained sedimentary rock containing solid organic matter that yields significant quantities of oil when heated." Encyclopedia Brittanica (2000). Once mined, oil shale can be a valuable fossil fuel.[1] This case involves an attempt by Plaintiff, Cliffs Synfuel Corporation, to patent four oil shale mining claims covering approximately 520 acres within the Green River Formation.

In the mid-Nineteenth century, Congress enacted the General Mining Law of 1872 that essentially gave away valuable mineral deposits, including oil shale deposits, to whomever first located them. The law was premised on a policy of encouraging exploration of valuable mineral deposits in the West. *See generally* 30 U.S.C. §§ 22–42 (1986). Following mining custom, the General Mining Law of 1872 provided that one who claimed a mineral deposit was required to perform a certain amount of work each year in prosecution of that claim in order to preclude subsequent miners from claiming the same land. 30 U.S.C. § 28 (1986). However, if a claimant failed to perform such work for a period and then later "resumed" work before anyone else asserted a claim on the same land, then his claim remained intact. *Id.* This became known in later years as the "resumption doctrine."

In 1920, Congress enacted the Mineral Lands Leasing Act, which had the effect of "completely chang[ing] the national policy over the disposition of oil shale lands." *Hickel*, 400 U.S. at 50, 91 S.Ct. at 198. No longer could one simply explore, stake a claim, and claim title. Rather, lands containing certain valuable mineral deposits, including oil shale, were available only through lease from the United States. *See* 30 U.S.C. §§ 181, 193, 241 (1986). However, the Act left intact those valid claims for, (among other things), oil shale already in existence as of February 25, 1920, so long as such claims were maintained in compliance with pre 1920 law. *See* 30 U.S.C. § 193 (1986); *Hickel*, 400 U.S. at 51, 91 S.Ct. 196 (calling § 193 a "Saving[s] Clause"). Thus, if one had a valid claim

---

1. It has been estimated by the United States Geological Survey that the Utah portion alone of the Uintah Basin contains sufficient oil shale to produce over forty-two billion barrels of crude oil. U.S. Geological Survey Bulletin 691 B.

that existed prior to February 25, 1920, the claimant would not be required to lease the claimed land on which the claim rested so long as the claim was maintained pursuant to pre–1920 law.

In 1989, Cliffs Synfuel Corporation ("Cliffs"), filed with the Utah State Office of the Bureau of Land Management ("USO/BLM") a mineral patent application, serial number UTU 65275, covering four oil shale mining claims, which claims were originally located in 1917.[2] On October 9, 1992, the USO/BLM issued a First Half / Mineral Entry Final Certificate ("Final Certificate") and on February 26, 1993, transmitted the application to a BLM certified mineral examiner in Vernal, Utah, for a field inspection and Mineral Report. The Mineral Report was issued on June 18, 1996. A government contest was initiated by USO/BLM against all four claims alleging (1) lack of discovery on or before February 25, 1920, (2) lack of discovery at the present time, and (3) failure of the claim owners to comply with 30 U.S.C. § 28. On the basis of these charges, USO/BLM requested that all four claims be declared invalid and canceled.

A two-day evidentiary hearing in Salt Lake City was held on December 15 and 16, 1997, before Administrative Law Judge Nicholas T. Kuzmack of the Interior Department's Office of Hearings and Appeals. Cliffs presented testimony and evidence supporting its position that required "discovery" had been timely made on each claim, and that annual assessment work, deficient for many years, had resumed in 1977, under the resumption doctrine codified at 30 U.S.C. § 28.

ALJ Kuzmack ruled in a written decision dated April 7, 1998, that all four Cliffs' claims met the standards for "discovery" both as of February 25, 1920, and as of the present, and thus rejected the government's two "discovery" challenges. However, Judge Kuzmack ruled that the four claims were still invalid for failure to comply with 30 U.S.C. § 28. ALJ Kuzmack reasoned that his finding on this point was controlled by the *Herr* decision, which declared the resumption doctrine "abandoned." The *Herr* decision relied upon the *Hickel* decision to support its conclusion concerning the status of the resumption doctrine.

Cliffs appealed Judge Kuzmack's ruling to the IBLA insofar as it was adverse to the mining claims, asserting that the resumption doctrine was still in effect in 1977—the year the claim owner resumed deficient assessment work. The USO/BLM also appealed Judge Kuzmack's ruling on the "discovery" issues, but that appeal was dismissed on jurisdictional grounds. On November 23, 1998, IBLA Administrative Judge James P. Terry issued a written opinion affirming ALJ Kuzmack's ruling, (the IBLA Decision).

On March 3, 1999, Cliffs filed a Complaint with this Court seeking judicial re-

---

**2.** Appendix C to the Bureau of Land Management's Mineral Report, (prepared in connection with Cliffs' patent application, and filed with the administrative court as Exhibit G4), is a summary of the claims at issue. The summary reveals that the claims were originally filed on September 17, 1917 by E.D. Lorimer and eight other persons. From 1920 to 1925, and 1927 to 1930 affidavits of labor were filed by various persons with the Uintah County Recorder Office, which affidavits presumably confirmed that the requisite labor or improvement was performed on the claims. However, from August 1930 to January 1978 no affidavits were filed. During this interim, the claims had been purchased by Sohio Petroleum Company. On February 28, 1978, Sohio filed the first affidavit of labor since 1930. Affidavits of labor were continually filed on an annual basis until Sohio sold the claims to Cliffs in 1986. Thereafter, Cliffs continued to file affidavits of labor and/or assessment work.

view of the IBLA Decision. Defendants filed an Answer on May 10, 1999. Cliffs then filed a Motion and Memorandum for Summary Judgment on September 10, 1999. On November 5, 1999, a Motion for Leave to File an Amicus Brief, with intended Brief Amicus attached, was filed with the Court by separate counsel for three owners of oil shale mining claims under challenge by the Interior Department on the same "assessment work" issue involved in the IBLA Decision in this case. Oral argument was heard on Cliffs' Motion for Summary Judgment on November 7, 2000.

## II. STANDARD OF REVIEW

Judicial review of an agency decision is governed in part by 5 U.S.C. § 706, which provides:

To the extent necessary to decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. The reviewing court shall—

.    .    .    .    .

(2) hold unlawful and set aside agency action, findings, and conclusions found to be-

(A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. . . .

Under the arbitrary and capricious standard, the Court must determine "whether the agency considered all relevant factors and whether there has been a clear error of judgment." *IMC Kalium Carlsbad, Inc. v. Interior Board of Land Appeals,* 206 F.3d 1003, 1012 (10th Cir.2000).

Additionally, when reviewing an agency's interpretation of a statute that it administers, this Court must apply the two-step analysis enunciated by the Supreme Court in *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S.

837, 842–43, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). The Tenth Circuit has clearly explained what analysis is required by *Chevron:*

When reviewing an agency's interpretation of a statute it administers, we first determine whether the statute is unambiguous. If the intent of Congress is clear then we must give effect to that intent. The judiciary is the final authority on issues of statutory construction and must reject administrative constructions which are contrary to clear congressional intent. If, however, the statute is ambiguous or silent on the issue in question, we must determine whether the agency's determination is based on a permissible construction of the statute. If so, we will defer to the agency's interpretation.

In determining the meaning of a statute, we look at not only the statute itself but also at the larger statutory context. We may ascertain the intent of Congress through statutory language and legislative history.

*Osborne v. Babbitt,* 61 F.3d 810, 812 (10th Cir.1995) (quoting *Utah v. Babbitt,* 53 F.3d 1145, 1148 (10th Cir.1995)).

## III. THE RESUMPTION DOCTRINE

At the heart of the dispute in this case is the status of the resumption doctrine after the *Hickel* decision. The resumption doctrine was codified at 30 U.S.C. § 28 as part of the 1872 Mining Act and reads in relevant part:

On each claim located after the 10th day of May 1872, that is granted a waiver under section 28f of this title, and until a patent has been issued therefor, not less than $100 worth of labor shall be performed or improvements made during each year. . . . .and upon failure to comply with these conditions, the claim or mine upon which such failure occurred

shall be open to relocation in the same manner as if no location of the same had ever been made, *provided that the original locators, their heirs, assigns, or legal representatives, have not resumed work upon the claim after failure and before such location.*

30 U.S.C. § 28 (1986) (emphasis added).

As evident by the clear language of the statute, one must perform at least $100 worth of labor or improvement each year lest one's claim becomes subject to relocation. However, the failure to perform such work does not automatically result in loss of the claim, but only subject to loss. One can redeem a claim by resuming performance of the necessary labor or improvement to the claim before another person "relocates" the claim.

## IV.  *DISCUSSION*

The Court begins by noting the clear Congressional intent expressed in § 28. The statute is not ambiguous and clearly sets forth the resumption doctrine. Thus, as an initial matter, this Court is charged with giving effect to the statute. *Osborne,* 61 F.3d at 812. The IBLA and *Herr* decisions held that the resumption doctrine was abandoned as to oil shale claims. For authority, they cite the *Hickel* decision. However, even the most generous reading of *Hickel* reveals that the IBLA's interpretation of the decision is unsupportable.

In *Hickel,* the Supreme Court was asked to determine if certain contests to oil shale mining claims in the early 1930's, which contests resulted in the cancellation by the Secretary of the Interior of the subject claims for failure of the claimants to perform assessment work, were void. The claim owners relied on dicta in two previous Supreme Court decisions—*Wilbur v. United States ex rel. Krushnic,* 280 U.S. 306, 50 S.Ct. 103, 74 L.Ed. 445 (1930) and *Ickes v. Virginia–Colorado Development Corp.,* 295 U.S. 639, 55 S.Ct. 888, 79 L.Ed.

1627 (1935)—to the effect that the failure to do assessment work inures only to the benefit of private persons wishing to "relocate" the claim. Based upon this dicta, the claim owners argued that the United States, specifically the Secretary of the Interior, did not have subject matter jurisdiction over the dispute, and therefore could not cancel the claims. *Hickel,* 400 U.S. at 50–53, 91 S.Ct. 196.

The Supreme Court rejected this argument on the grounds that the 1920 Act put the United States in the same position as a private locator under the Act, and thus allowed the United States to challenge the status of a mining claim for failure of the claimant to perform assessment work. The Supreme Court stated:

> We disagree with the dicta in these opinions that default in doing the assessment work inures only to the benefit of relocators, as we are of the view that § 37 of the 1920 Act makes the United States the beneficiary of all claims invalid for lack of assessment work or otherwise. It follows that the Department of the Interior had, and has, subject matter jurisdiction over contests involving the performance of assessment work.

*Id.* at 57, 91 S.Ct. 196.

██  *Hickel* stands for the proposition that the 1920 Act put the United States in the same position, (and thus gave the United States the same rights), as a private mining claimant to challenge the status of a mining claim that has not had the required assessment work performed. Such mining claims have not been made "invalid" for failure to do assessment work, only subject to challenge. *Hickel* gives the United States the same standing as a private mining claimant might exercise—the right to challenge the rights to the claim. In the case of a private mining claimant, that right consists of a right to relocate the claim. In the case of the United States, it

is the right to challenge the validity of the claim in an appropriate forum.

The IBLA in *Herr* made a remarkable extrapolation from *Hickel*, one that dilutes the Supreme Court's guidance and pushes the margin of reasonable interpretation. The *Herr* court "reasoned" that because the United States had been deemed the "beneficiary of all claims invalid for lack of assessment work," *Hickel*, 400 U.S. at 56, 91 S.Ct. 196, the "resumption doctrine was no longer applicable to oil shale claims." *Herr*, 130 IBLA at 367. Thus, according to *Herr*, the Supreme Court in *Hickel* effected a line-item veto to § 28—striking the clause "provided that the original locators, their heirs, assigns, or legal representatives, have not resumed work upon the claim after failure and before such location"—as applied to oil shale claims. Although this Court need not expend much time or space to crystallize the patent defect in this reading of *Hickel*, the more obvious reasons for rejecting this interpretation will be set forth.

■ First, nothing in the *Hickel* opinion suggests that the Supreme Court intended to abrogate the resumption doctrine. In fact the status of the resumption doctrine as it existed after the 1920 Act was not at issue in *Hickel*. There was no assertion in *Hickel* that assessment work had been resumed prior to the challenges in the 1930's by the Secretary of the Interior. The sole issue was whether, pursuant to post 1920 Act mining policy, the failure to perform assessment work gave the United States the opportunity to challenge a claim. If the Supreme Court had intended to invali-

date § 28 as it applied to pre-1920 oil shale claims, it would have expressly done so; the Supreme Court knows how to say a statute is invalid. Accordingly, this Court finds that the *Herr* decision misinterprets the *Hickel* decision. Because the misinterpretation is contrary to the plain and unambiguous language of § 28 and the Savings Clause of § 193,[3] the construction advanced in *Herr* must be rejected as contrary to clear congressional intent. For the same reason, the IBLA Decision in this case which followed *Herr* must be rejected as contrary to clear congressional intent as set forth in unambiguous statutory language.

Second, the *Herr* court's misinterpretation of *Hickel* could easily lead to a manifest injustice as evidenced by this very case. For example, a mining claimant could be the owner, or the purchaser, of oil shale mining claims with a history of noncompliance with assessment work requirements, but with hopes that the claim could be revived by resuming assessment work consistent with § 28. Substantial sums of money could be invested in working the claims, or in buying and selling such claims, all in reliance that § 28 means what it states. It would by wholly unfair, and inconsistent with any notion of the protection of property rights, if the Department of the Interior were permitted to, in effect, sit back while this assessment work was performed, wait until a patent is sought, and only then assert "sorry, the claim was invalid all along!"

Intensifying the injustice resulting from *Herr*'s erroneous interpretation of *Hickel*

---

**3.** 30 U.S.C. § 193 provides:

The deposits of coal, phosphate, sodium, potassium, oil, oil shale, and gas, herein referred to, in lands valuable for such minerals, including lands and deposits in Lander, Wyoming, coal entries numbered 18 to 49, inclusive, shall be subject to disposition only in the form and manner provided in

this chapter, except as provided in sections 1716 and 1719 of title 43, *and except as to valid claims existent on February 25, 1920, and thereafter maintained in compliance with the laws under which initiated, which claims may be perfected under such laws,* including discovery.
(emphasis added).

is the fact that pre–1920 mining claims, provided certain conditions were met, vested the claimants with property rights. *See, e.g., Best v. Humboldt Placer Mining Co.,* 371 U.S. 334, 336, 83 S.Ct. 379, 9 L.Ed.2d 350 (1963); *Gwillim v. Donnellan,* 115 U.S. 45, 5 S.Ct. 1110, 29 L.Ed. 348 (1885). The divestment of these property rights could only occur upon the simultaneity of the claim holder's failure to maintain *and* the subsequent relocation of the claim by a third person. However, the third person, of course, had to affirmatively relocate the claim. The claim did not *ipso facto* revert to the third person upon the original claimant's failure to maintain it. *Hickel* holds that the 1920 Act changed this process by putting the United States in the same position as third persons were prior to the Act. However, the 1920 Act, as construed by *Hickel,* did not give the United States greater rights to challenge title to claims than third persons possessed. Rather, just like private individuals prior to the 1920 Act, and in harmony with giving full effect to § 28 and § 193's unambiguously expressed congressional intent, if the United States desires to recapture a claim as the "beneficiary of claims invalid," it must take some affirmative action towards invalidating the claim before assessment work has resumed.[4]

██ Third, only one year prior to the *Herr* decision, § 28 was amended by Congress, which amendment left the resumption doctrine unaltered.[5] Where Congress has amended a statute, but left some portions unchanged, the presumption is that Congress intended to leave the untouched

provisions' original meaning intact. *See Kirchner v. Kansas Turnpike Authority,* 336 F.2d 222, 230 (10th Cir.1964) ("Provisions of the original Act which are repeated in the body of the amendment, either in the same or equivalent words, are considered a continuation of the original law."); *Tyson v. United States,* 285 F.2d 19, 22 (10th Cir.1960) ("[P]rovisions of an original act or section re-enacted or substantially repeated in an amendment are construed as a continuation of the original law."); *Chelette v. Harris,* 229 F.3d 684, 686 (8th Cir.2000) ("When Congress repeatedly amends only some portions of a statute, we infer that it intends no change to the law of unamended portions."); *American Casualty Co. of Reading, Pennsylvania v. Nordic Leasing, Inc.,* 42 F.3d 725, 732, n. 7 (2d Cir.1994) ("Where sections of a statute have been amended but certain provisions have been left unchanged, we must generally assume that the legislature intended to leave the untouched provisions' original meaning intact."). Thus, more than twenty years after *Hickel,* and only one year prior to *Herr,* the presumption was that Congress intended the resumption doctrine's original meaning to be left intact. Part of § 28's original meaning was, of course, that the resumption doctrine applied to oil shale claims. The IBLA and *Herr* decisions wholly fail to state any adequate grounds that overcome this presumption.

Finally, this Court finds persuasive Judge Finesilver's decisions interpreting *Hickel,* decisions that were contemporane-

---

4. To be clear, the Court does not intend to infer that the United States must take affirmative action before the resumption ·of assessment work in order to have *standing* to challenge a mining claim. The United States clearly has standing to challenge any mining claim to the extent allowed by *Hickel.* This Court is concerned about the United States' wrongful invalidation of mining claims prop-

erly preserved pursuant to the resumption doctrine, not the United States' standing or ability to challenge such mining claims.

5. The 1993 Amendment inserted "that is granted a waiver under section 28f of this title," after "On each claim located after the 10th day of May, eighteen hundred and seventy-two." *See* Pub.L. 103–66, § 10105(b).

ous with the *Hickel* decision. Those decisions are much better authority for the proper interpretation of *Hickel* than the IBLA Decision some twenty years later. This Court adopts Judge Finesilver's reasoning in the three cases cited by counsel: *Oil Shale Corp. v. Morton,* 370 F.Supp. 108 (D.Colo.1973); *TOSCO v. Hodel,* 611 F.Supp. 1130 (D.Colo.1985); and *Marathon Oil Co. v. Lujan,* 751 F.Supp. 1454 (D.Colo.1990).

In sum, *Hickel* does not hold that failure to do assessment work, even substantial noncompliance with the assessment requirement, is somehow self-effectuating, or results in the *ipso facto* loss of rights under a pre–1920 mining claim. Rather, the *Hickel* decision stands for the proposition that the Department of the Interior has standing to challenge the holder of oil shale mining claims for failure to substantially comply with the assessment requirements. The IBLA Decision, following *Herr,* seemingly discarded § 28 and § 193's straightforward language to reach an alternative, strained, and erroneous reading of *Hickel.* This was arbitrary, capricious, and an abuse of discretion.

## V. CONCLUSION AND ORDER

Plaintiff's Motion for Summary Judgment is GRANTED except as to the relief sought on the basis of estoppel, as to which it is not necessary for the Court to make a specific finding. Because the record is clear that Cliffs performed adequate annual assessment work on its claims beginning in 1978, and otherwise complied with all other assessment work requirements, the Court finds it unnecessary to remand for a determination of whether Cliffs' claims were revived by the resumption doctrine. Accordingly, the Court recognizes the four oil shale mining claims as being valid and in good standing, and the decisions of the Office of Hearings and Appeals and the IBLA are vacated and set aside insofar as they purport to invalidate the subject claims. The United States Department of the Interior is ordered to proceed diligently to process Cliffs' Mineral Patent Application and to issue the requested patent. The Court will retain jurisdiction of this case, and requires Defendants to show good cause within sixty (60) days of this Order if there is any reason why the applied-for patent should not issue promptly.

IT IS SO ORDERED.