**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| SIERRA CLUB; CENTER FOR BIOLOGICAL DIVERSITY; DEFENDERS OF WILDLIFE,<br><br>     *Plaintiffs-Appellants*,<br><br>v.<br><br>BUREAU OF LAND MANAGEMENT; JAMES KENNA, in his official capacity as California State Director, Bureau of Land Management; SALLY JEWELL[*], in her official capacity as Secretary of the Interior,<br>     *Defendants-Appellees*,<br><br>NORTH SKY RIVER ENERGY, LLC,<br> *Intervenor-Defendant–Appellee*. | No. 13-15383<br><br>D.C. No.<br>1:12-cv-01193-AWI-JLT<br><br><br>OPINION |

Appeal from the United States District Court
for the Eastern District of California
Anthony W. Ishii, Senior District Judge, Presiding

Argued and Submitted
February 5, 2015—San Francisco, California

---

[*] Sally Jewell is substituted for her predecessor pursuant to Fed. R. App. P. 43(c)(2).

Filed May 27, 2015

Before: Richard C. Tallman and Johnnie B. Rawlinson, Circuit Judges, and Raymond J. Dearie, Senior District Judge.[**]

Opinion by Judge Rawlinson

## SUMMARY[***]

### Environmental Law

The panel affirmed the district court's judgment upholding the decision of the United States Bureau of Land Management to grant a right-of-way over federal land for a wind energy project developed on private land by intervenor North Sky River Energy, LLC.

The Wind Project was developed near Tehachapi, California; and the Road Project was initiated when North Sky applied to the BLM for a right-of-way to connect the Wind Project to an existing state highway. Because the Wind Project could be built without the federal Road Project, and because the federal Road Project had independent utility, the BLM concluded that the Wind Project was not subject to formal consultation under the Endangered Species Act, and

---

[**] The Honorable Raymond J. Dearie, Senior United States District Judge for the Eastern District of New York, sitting by designation.

[***] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

need not be analyzed as a connected action under the National Environmental Policy Act.

The panel held that the Wind Project did not trigger BLM's duty to initiate consultation with the United States Fish and Wildlife Service under the Endangered Species Act. The panel also held that the Wind Project did not trigger BLM's duty to prepare an Environmental Impact Statement under the National Environmental Policy Act because the Wind Project was not a federal action or connected to the Road Project.

## COUNSEL

Matthew Vespa, Sierra Club, San Francisco, California; Jason C. Rylander (argued), Defenders of Wildlife, Washington, D.C.; Lisa T. Belenky, Center for Biological Diversity, San Francisco, California; and Babak Naficy, Law Offices of Babak Naficy, San Luis Obispo, California, for Plaintiff-Appellants.

Robert G. Dreher, Acting Assistant Attorney General, Jared Pettinato, Stephen Finn, Bradley H. Oliphant, and Lane N. McFadden (argued), Attorneys, United States Department of Justice, Environment and Natural Resources Division, Washington, D.C.; and Gregory Russell, United States Department of the Interior, Office of the Solicitor, Washington, D.C., for Defendants-Appellees.

Daniel J. Dunn (argued), Andrew L. Spielman, Jennifer L. Biever, and Margaret A. Parish, Hogan Lovells U.S. LLP, Denver, Colorado; and Zachary R. Walton, Christine W.

Griffith, and Elizabeth L. Bridges, SSL Law Firm, LLP, San Francisco, California for Intervenor-Defendant–Appellee.

**OPINION**

RAWLINSON, Circuit Judge:

Plaintiffs-Appellants Sierra Club, Center for Biological Diversity, and Defenders of Wildlife (collectively Sierra Club) appeal the district court ruling upholding the decision by the United States Bureau of Land Management (BLM) to grant a right-of-way over federal land (Road Project) for a wind energy project (Wind Project) developed on private land by Intervenor-Appellee North Sky River Energy, LLC (North Sky). Because the Wind Project does not trigger the (1) duty to consult under the Endangered Species Act (ESA) or (2) duty to prepare an Environmental Impact Statement (EIS) under the National Environmental Policy Act (NEPA), we affirm the decision of the district court.

## I.  BACKGROUND

The Wind Project is a wind energy project developed by North Sky on more than 12,000 acres of private land located in the Sierra Nevada mountain range, northeast of Tehachapi, California. The Road Project was initiated when North Sky applied to the BLM for a right-of-way over federal land to connect the Wind Project to an existing state highway. The right-of-way (Road Project) would contain underground power and fiber optic communication lines from the Wind Project to California's energy grid.

North Sky's original request to the BLM included wind turbines on BLM land. Several months later, North Sky withdrew the original request and changed the proposal (Revised Proposal) to eliminate the turbines on federal land. Instead, North Sky sought permission to use and improve some existing BLM roads, to "construct a transmission generation tie (gen-tie) line, and construct new roads to access private property owned by" North Sky.[1]

The Revised Proposal also identified an "alternative route" of access to the Wind Project that traversed private land only (Private Road Option). The Revised Proposal noted that the Private Road Option would have "topographical constraints," which would require "earthmoving measures such as cut-and-fill, grading," "possible stream alteration," "[b]ulldozing, blasting, and tree-clearing." That level of disturbance would "greatly impact vegetation and wildlife habitat," and possibly cause erosion. After considering "accessibility, distance, road condition, and potential environmental impacts[,]" North Sky rejected the Private Road Option in favor of the access Road Project "to utilize as much existing road as possible, and thereby minimize environmental impacts."

Internal communications among BLM employees track the BLM's review of the evolving project. Initially, BLM employees anticipated seeking consultation on the Wind Project as an interdependent or interrelated activity under section 7 of the ESA. But in these discussions, BLM staff did not consider the Private Road Option. The BLM later received and considered a draft environmental impact report

---

[1] The gen-tie line would enable harvested wind energy to be transmitted to the main power grid.

prepared by Kern County during its state-level review of the Wind Project. The report from Kern County addressed the feasibility of the Private Road Option, which it described as requiring improvements "on up to 28 miles" of existing roads and construction of 2.5 miles of new roads through privately-owned land. Nonetheless, North Sky submitted documents to the BLM advising that the company could pursue the Private Road Option if their right-of-way application were denied.

After review of the Revised Proposal and related documents, the BLM issued an environmental assessment, in which the BLM found that the Road Project would have no significant environmental impact. Therefore, the BLM was not required to (1) consult with the United States Fish and Wildlife Service (FWS) under the ESA, or (2) prepare an Environmental Impact Statement under NEPA. This determination depended in large part upon the BLM's conclusion that the Private Road Option was a viable alternative to the Road Project.

The only public comment received was from Sierra Club challenging, *inter alia*, the viability of the Private Road Option. However, the BLM responded that it had analyzed the Private Road Option as a "technically and economically feasible" alternative to the Road Project. The BLM determined that North Sky's pursuit of the Private Road Option, if the BLM denied easements over federal land for the Road Project, was "neither remote nor speculative." The BLM noted that the Road Project would "provide dust control, reduce erosion, and reduce unauthorized motor vehicle access to the Pacific Crest Trail." Because the Wind Project could be built without the federal Road Project, and because the federal Road Project had independent utility, the BLM concluded that the Wind Project was not subject to

formal consultation under the ESA, and need not be analyzed as a connected action under NEPA.

The BLM initially sought informal consultation under the ESA with the FWS about the impact of the Road Project on the desert tortoise and California Condor.  The BLM withdrew consultation after the agencies determined that the desert tortoise and California Condor were not present in the Road Project area.  The BLM also issued a Finding of No Significant Impact under NEPA after concluding that the Road Project would not have a significant environmental impact.  The BLM noted that, because of the existence of the Private Road Option, North Sky was expected to go forward with the Wind Project regardless of whether it received the right-of-way grant from the BLM.

After the BLM issued a permit for the Road Project, Sierra Club sued the BLM, alleging that the decision to grant the easement through federal land violated both the ESA and NEPA.  Applying the arbitrary and capricious standard of review, the district court denied Sierra Club's motion for summary judgment and granted the BLM's and North Sky's motions for summary judgment.  Sierra Club filed a timely appeal.

## II.  STANDARD OF REVIEW

We review the district court's grant of summary judgment in favor of the BLM *de novo* and the agency decision under an arbitrary and capricious standard.  *See Chemehuevi Indian Tribe v. Jewell*, 767 F.3d 900, 903 (9th Cir. 2014) (summary judgment); *Friends of the Wild Swan v. Weber*, 767 F.3d 936, 942 (9th Cir. 2014) (Administrative Procedure Act).

## III.    DISCUSSION

The sole issue on appeal is whether the BLM was required to initiate consultation with the FWS under the ESA, or to prepare an EIS under NEPA analyzing the Wind Project. We conclude that no consultation or EIS was required.

### A.  The Endangered Species Act

The ESA "requires federal agencies to ensure, in consultation with the appropriate wildlife agency, that any action *authorized or carried out by the agency* is not likely to jeopardize the continued existence of any endangered species or threatened species" or habitat. *Alliance for the Wild Rockies v. U.S. Dept. of Agric.*, 772 F.3d 592, 601 (9th Cir. 2014) (emphasis added) (citation and internal quotation marks omitted). The ESA consultation requirement is triggered *only* by federal agency actions. *See* 16 U.S.C. § 1536(a). The federal agency must consider "the direct and indirect effects of [its] action on the species or critical habitat, together with the effects of other activities that are interrelated or interdependent with that action . . ." 50 C.F.R. § 402.02.

#### 1.  Direct Effects

The duty to consult on the direct effects of an agency action is triggered only if the agency action is "affirmatively authorized, funded, or carried out [by a federal agency]" and "in which there is discretionary Federal involvement or control." *Karuk Tribe of Cal. v. U.S. Forest Serv.*, 681 F.3d 1006, 1020–21 (9th Cir. 2012) (citation and internal quotation marks omitted).

Although the BLM was required to and did consult on the direct effects of the Road Project, the BLM was not required to consult on the direct effects of the Wind Project because the Wind Project did not constitute agency action. The Wind Project was developed by a private company on private land. Although North Sky ultimately sought a right-of-way over BLM land to more directly access the Wind Project, North Sky had the option of an alternative route traversing private property. Consequently, construction of the Wind Project was not dependent on existence of the federal right-of-way (Road Project). In other words, the Wind Project and the Road Project were separate and independent ventures, one public (Road Project) and one private (Wind Project).

The Wind Project was not funded, authorized, or constructed by any federal agency. Nor was there any discretionary involvement or control over any part of the Wind Project by any federal agency that had "the capacity to inure to the benefit of a protected species . . . ." *Karuk Tribe*, 681 F.3d at 1024 (citation omitted). Consequently, no duty to consult arose under the ESA. *See Alliance for the Wild Rockies*, 772 F.3d at 600–01; *see also Karuk Tribe*, 681 F.3d at 1020–21, 1024.

### 2.  Indirect Effects

In addition to consulting on the direct effects, federal agencies must consult on the indirect effects of their proposed actions. *See San Luis & Delta-Mendota Water Auth. v. Locke*, 776 F.3d 971, 1009 (9th Cir. 2014); *see also* 50 C.F.R. § 402.02. "To show that something is an indirect effect of the proposed action, [the plaintiff] must demonstrate (1) that it is caused by the action, (2) that it is later in time than the action, and (3) that it is reasonably likely to occur. . . ." *Locke*,

776 F.3d at 1009 (citation omitted). Only the first factor is in dispute.

Citing to the ESA Section 7 Consultation Handbook prepared by the FWS and the National Marine Fisheries Service, we have explained that indirect effects are "attenuated" consequences of the agency action. *Id.* In doing so, we repeated the Handbook's example of the renewal of "water services contracts in the San Joaquin Basin." *Id.* (alterations omitted). Residents could use the water from the contracts to engage in agriculture. However, agricultural development destroyed the habitat of listed species. This destruction of habitat was not directly caused by renewing the water services contract, but resulted indirectly from use of the water that was provided through the contracts. *See id.*

In contrast, the record does not support the conclusion that the Wind Project is an indirect effect of the Road Project. It cannot be fairly said that the Road Project caused the Wind Project or brought it into existence. *See* 50 C.F.R. § 402.02. Rather, the record reflects that the Wind Project would have been completed without the BLM's approval of the Road Project, if North Sky had proceeded with the Private Road Option.

### 3. Interrelated or Interdependent Actions

Sierra Club contends in the alternative that the BLM was required to consider the effects of the Wind Project as an activity interrelated to and/or interdependent with the Road Project, thereby requiring consultation under the ESA.

"Interrelated actions are those that are part of a larger action and depend on the larger action for their justification.

Interdependent actions are those that have no independent utility apart from the action under consideration." *Id.* "The test for interrelatedness or interdependentness is 'but for' causation: but for the *federal* project, these activities would not occur. . . ." *Sierra Club v. Marsh*, 816 F.2d 1376, 1387 (9th Cir. 1987) (emphasis added) (citation omitted).

As in *Sierra Club*, the private Wind Project was not part of the federal Road Project, and was not dependent on it. *See id.* Because North Sky was prepared to use a private access road to complete the Wind Project if the federal Road Project did not materialize, the federal Road Project was not the "but for" cause of the private Wind Project.

Even if we accept Sierra Club's argument that the Road Project was required to have utility apart from the Wind Project, Sierra Club still would not prevail. As the BLM noted, both projects are independent and have utility separate and apart from each other; the Wind Project was viable with or without the right-of-way over federal land, and the Road Project served the independent purposes of dust control, reducing erosion, and controlling unauthorized vehicle access to a national trail. In sum, these projects fail the "but for" causation test, and neither is an integral part of the other, neither depends on the other for its justification, and each has utility independent from the other. *Id.*; *see also* 50 C.F.R. § 402.02.

## B. *The National Environmental Policy Act*

NEPA mandates that federal agencies taking any "major Federal action significantly affecting the quality of the human environment" prepare an Environmental Impact Statement. *San Luis & Delta-Mendota Water Auth. v. Jewell*, 747 F.3d

581, 642 (9th Cir. 2014) (alteration omitted). Major federal actions include all actions "which are potentially subject to Federal control and responsibility." 40 C.F.R. § 1508.18. The scope of the Environmental Impact Statement extends to "connected, cumulative, and similar actions." *W. Watersheds Project v. Abbey*, 719 F.3d 1035, 1046 (9th Cir. 2013).

The Wind Project did not trigger consultation requirements under the NEPA. *See San Luis & Delta-Mendota Water Auth. v. Jewell*, 747 F.3d at 642; *see also* 40 C.F.R. § 1508.18. As explained, the Wind Project is not a major federal action because the BLM has no control or responsibility over any aspect of the Wind Project. *See id.*

In any event, the BLM would not have been required to consider the effects of the Wind Project under NEPA because the Road and Wind Projects are not connected, cumulative, or similar actions.**[2]** *See Cal. ex rel. Imperial Cnty. Air Pollution Control Dist. v. U.S. Dept. of the Interior*, 767 F.3d 781, 795 (9th Cir. 2014), *as amended*. "We apply an 'independent utility' test to determine whether multiple actions are so connected as to mandate consideration in a single EIS. The crux of the test is whether '*each of two projects* would have taken place *with or without the other* and thus had independent utility.'" *Id.* (emphases added) (citation omitted); *see also Pac. Coast Fed. of Fishermen's Ass'ns v. Blank*, 693 F.3d 1084, 1098 (9th Cir. 2012) (same). We have occasionally stated this same test alternatively as "when one of the projects might reasonably have been completed without the existence of the other, *the two projects have independent utility* and are not 'connected' for NEPA's purposes." *Pac.*

---

**[2]** Because Sierra Club contends only that the projects are connected, we confine our discussion to that factor.

*Coast Fed. of Fishermen's Ass'ns*, 693 F.3d at 1098 (emphasis added) (citation and alteration omitted).  Rather than adopting a single independent utility test, we have focused on whether "*each of two projects* would have taken place with or without the other," and have extended our analysis to each project.  *Id.* at 1098–99 (emphasis added).

The Road and Wind Projects have independent utility and are not connected.  *See id.*  The Road Project was independently useful for providing dust and stormwater control and limiting access to the Pacific Crest Trail.  *See id.* And, North Sky would likely have developed the Wind Project even without the access provided by the Road Project because it could have accessed its land using the Private Road Option.  Thus, these projects had independent utility.

Finally, the BLM sufficiently evaluated the Wind Project as a cumulative effect of the Road Project.  The environmental assessment contained a detailed analysis of wind farms within 25 miles of the right-of-way, including the North Sky wind farm.  In sum, the BLM was not required to prepare an Environmental Impact Statement under NEPA, because the Wind Project was not a federal action or connected to the Road Project.

The district court's passing remark suggesting that the California Environmental Quality Act Environmental Impact Report could serve as a mechanism to satisfy NEPA was harmless, as the NEPA requirements were not triggered for the Wind Project and the BLM conducted an environmental assessment for the Road Project.

Admittedly, the BLM initially indicated that consultation might be required for the Wind Project.  However, the BLM's

evolving analysis was not a change in a published regulation or official policy. *Cf. F.C.C. v. Fox Television Stations, Inc.*, 556 U.S. 502, 514–16 (2012) (clarifying that an agency must explain a change in official policy); *id.* at 536 (Kennedy, J., concurring) (same).      And, the BLM's change of view regarding the need for consultation was adequately justified after further investigation demonstrated the feasibility of private access. *See id.* at 516.   Thus, the BLM did not act arbitrarily or capriciously when it changed its unofficial position regarding consultation.

## IV.      CONCLUSION

The BLM did not violate the ESA when it determined that consultation was not required under the ESA for the Wind Project because the federal Road Project and the private Wind Project are two separate projects, the Wind Project is not an indirect effect of the Road Project, and the two projects are not interrelated or interdependent.  The BLM did not violate NEPA when it determined that no EIS analyzing the Wind Project was required because the Road and Wind Projects have independent utility and are not connected actions.

**AFFIRMED.**