NOT FOR PUBLICATION

**FILED**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

AUG 28 2020

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| CHILKAT INDIAN VILLAGE OF KLUKWAN; SOUTHEAST ALASKA CONSERVATION COUNCIL; LYNN CANAL CONSERVATION; RIVERS WITHOUT BORDERS, a project of Tides Center,<br><br>　　　　Plaintiffs-Appellants,<br><br>　v.<br><br>BUREAU OF LAND MANAGEMENT; BRIAN STEED, in his official capacity as Acting Director of the Bureau of Land Management; CHAD PADGETT, in his official capacity as Alaska State Director of the Bureau of Land Management; MARNIE GRAHAM, in her official capacity as Field Manager of the Bureau of Land Management Glennallen Field Office,<br><br>　　　　Defendants-Appellees,<br><br>　and<br><br>ALYU MINING CO. INC.; HAINES MINING & EXPLORATION, INC.; CONSTANTINE NORTH, LLC, | No.　19-35424<br><br>D.C. No. 3:17-cv-00253-TMB<br><br>MEMORANDUM* |

　　　*　This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

Appeal from the United States District Court
for the District of Alaska
Timothy M. Burgess, Chief District Judge, Presiding

Argued and Submitted June 3, 2020
Anchorage, Alaska

Before: CHRISTEN, WATFORD, and BADE, Circuit Judges.

Plaintiffs-Appellants seek reversal of the district court's grant of summary judgment on their claims under the National Environmental Policy Act (NEPA), 42 U.S.C. §§ 4321–4370. In these claims, Appellants challenged the Bureau of Land Management's (BLM) approval of Intervenor-Defendants' operations plans for hard rock mineral exploration on a large parcel of public land in southeastern Alaska (the "Palmer Project"). Because the parties are familiar with the administrative record and facts, we do not recount them here. We have jurisdiction under 28 U.S.C. § 1291, and we affirm the district court.

We review the district court's grant of summary judgment de novo. *Westlands Water Dist. v. U.S. Dep't of Interior*, 376 F.3d 853, 865 (9th Cir. 2004). For claims brought pursuant to NEPA, we may set aside agency actions that are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *Id.* (quoting 5 U.S.C. § 706(2)(A)).

1. Appellants fail to demonstrate that NEPA's timeliness provisions

required BLM to consider the environmental impacts of the future development of a mine on the Palmer Project prior to approving Intervenors' exploration plans.[1] An environmental impact statement (EIS) is intended "to apprise decisionmakers of the disruptive environmental effects that may flow from their decisions at a time when they 'retain[] a maximum range of options.'" *Conner v. Burford*, 848 F.2d 1441, 1446 (9th Cir. 1988) (alteration in original) (quoting *Sierra Club v. Peterson*, 717 F.2d 1409, 1414 (D.C. Cir. 1983)). Thus, an agency must consider all of the environmental impacts of a project at the agency's "point of commitment"—i.e., the point at which it "irreversibl[y] and irretrievabl[y] commit[s]" federal land to activities "that could have a significant impact on the environment." *Id.*; *see also* 42 U.S.C. § 4332(C)(v) (providing an EIS must include a statement regarding "any irreversible and irretrievable commitments of resources which would be involved in the proposed action should it be implemented").

Appellants contend that, by approving the operations plans, BLM will lose its authority to preclude Intervenors from developing hard rock mineral mines on the Palmer Project. More specifically, they argue that BLM would no longer be able to petition the Secretary of the Interior (the "Secretary") to exercise his

---

[1] The "exploration" phase of a mine's life cycle refers to the search for mineral deposits and any efforts to determine the size and value of those deposits. In contrast, during the "development" or "extraction" phase, a mining company develops plans for the construction of a physical mine and removes the minerals from the earth.

3

authority under the Federal Land Policy and Management Act of 1976 (FLPMA), 43 U.S.C. §§ 1701–1787, to withdraw Palmer Project lands from operation of the General Mining Act of 1872 (the "Mining Act"), 30 U.S.C. §§ 22–54. *See* 43 U.S.C. § 1714(c)–(d); *Nat'l Mining Assoc. v. Zinke*, 877 F.3d 845, 854–57 (9th Cir. 2017). We disagree.

The record in this case contains insufficient evidence to conclude that BLM's commitment is either "irreversible" or "irretrievable." *Conner*, 848 F.2d at 1446. For example, the record contains no indication that BLM cannot still successfully petition the Secretary to withdraw the Palmer Project lands under FLPMA after approving Intervenors' exploration plans. Although we agree that BLM's approval may make it *more likely* that Intervenors make a discovery sufficient to limit the Secretary's FLMPA withdrawal authority, *see* FLPMA, Pub. L. No. 94-579, § 701(h), 90 Stat. 2743, 2786 (1976) ("All actions by the Secretary concerned under this Act shall be subject to valid existing rights."), Appellants do not demonstrate that such a discovery is imminent. Thus, we cannot conclude that BLM's approval amounts to an "irreversible and irretrievable commitment" of Palmer Project lands to future mine development. *Conner*, 848 F.2d at 1446.

Our holding in *Conner* does not require that we conclude otherwise. In *Conner*, this court considered a similar question: whether BLM violated NEPA by failing to consider the environmental impacts of drilling prior to its sale of oil and

4

gas leases under the Mineral Leasing Act of 1920. 848 F.2d at 1442–43, 1452. We held a full analysis was required in that case because, in issuing the leases, the government retained the right *only* "to impose reasonable conditions" on any surface disturbing activity. *Id.* at 1444. Because the sale forfeited the government's ability "to prevent . . . surface-disturbing activity" entirely, we concluded that BLM made an "irretrievable commitment of [public] resources" by selling the leases. *Id.* at 1449, 1451.

But unlike the Mineral Leasing Act, which was at issue in *Conner*, the Mining Act provides a default rule that public lands "shall be free and open to exploration and purchase." 30 U.S.C. § 22; *see also Hickel v. Oil Shale Corp.*, 400 U.S. 48, 51 (1970) ("[I]n 1920, Congress by enacting [§] 21 of the Mineral Lands Leasing Act completely changed the national policy over the disposition of oil shale lands. Thereafter such lands were no longer open to location and acquisition of title but only to lease." (internal citations omitted)). Thus, the problem flagged by Appellants—that Intervenors might make a discovery sufficient to preclude a FLPMA withdrawal—results as a function of the Mining Act rather than any relinquishment by BLM of its preclusion ability. Accordingly, we conclude that BLM did not violate NEPA's timeliness requirements by failing to examine the environmental impacts of a future mine on the Palmer Project.

2.      For similar reasons, BLM did not act arbitrarily by failing to consider

5

the impacts of future mining activity on the Palmer Project as "cumulative" to those examined in its environmental assessment (EA).

When an agency prepares an EA, "that document must consider the cumulative impacts of the action under consideration." *League of Wilderness Defs. v. Connaughton*, 752 F.3d 755, 762 (9th Cir. 2014) (citing 40 C.F.R. § 1508.7); *Kern v. U.S. Bureau of Land Mgmt.*, 284 F.3d 1062, 1075 (9th Cir. 2002). Cumulative impacts are those "impact[s] on the environment which result[] from the incremental impact[s] of an action when added to other past, present, and reasonably foreseeable future actions." *Jones v. Nat'l Marine Fisheries Serv.*, 741 F.3d 989, 1000 (9th Cir. 2013) (quoting 40 C.F.R. § 1508.7). If the agency does not have "enough information . . . to permit meaningful consideration" and "the parameters of [a future] project [a]re unknown," we have found that the agency does not act arbitrarily by excluding those projects from its analysis of the cumulative impact. *Envtl. Prot. Info. Ctr. v. U.S. Forest Serv.*, 451 F.3d 1005, 1014–15 (9th Cir. 2006) (citations omitted).

As in *Jones*, Appellants fail to point to any "reliable study or projection of future mining" on the Palmer Project within the record. 741 F.3d at 1001. Although the record contains some data about the mineral deposits on the Palmer Project, and indicates a desire by Intervenors to ultimately develop a mine, it contains no estimate of the scale or scope of a future mine, *see Envtl. Prot. Info. Ctr.*, 451 F.3d at 1014–

6

15, nor any "specific proposal[]," *Jones*, 741 F.3d at 1000, nor a projection of future mining activity, *see N. Plains Res. Council, Inc. v. Surface Transp. Bd.*, 668 F.3d 1067, 1079 (9th Cir. 2011). At best, the record contains evidence amounting to "general plans for expanding mining." *Jones*, 741 F.3d at 1001. But, as we have held, this alone "do[es] not require a cumulative impacts analysis." *Id.* Therefore, BLM did not act arbitrarily and capriciously by failing to consider the cumulative impacts of a future mine development on the Palmer Project as a reasonably foreseeable action.

3. Finally, BLM did not err by concluding that the development of a future mine was not a "connected action." Regulations promulgated pursuant to NEPA require that an agency consider "connected actions" within a single EA. 40 C.F.R. § 1508.25(a)(1); *Klamath-Siskiyou Wildlands Ctr. v. Bureau of Land Mgm't*, 387 F.3d 989, 998–99 (9th Cir. 2004). In evaluating whether actions are connected, "[w]e apply an 'independent utility' test to determine whether multiple actions are so connected as to mandate consideration in a single [EA]." *Sierra Club v. Bureau of Land Mgm't*, 786 F.3d 1219, 1226 (9th Cir. 2015) (quoting *Cal. ex rel. Imperial Cnty. Air Pollution Control Dist. v. U.S. Dep't of Interior*, 767 F.3d 781, 795 (9th Cir. 2014)). The critical question is whether "*each of two projects* would have taken place with or without the other." *Id.* (quoting *Pac. Coast Fed'n of Fishermen's Ass'ns v. Blank*, 693 F.3d 1084, 1098 (9th Cir. 2012)); *see also Thomas v. Peterson*,

7

753 F.2d 754, 759 (9th Cir. 1985) (noting that connected actions are those that are "inextricably intertwined"), *abrogated on other grounds as recognized by Cottonwood Envtl. L. Ctr. v. U.S. Forest Serv.*, 789 F.3d 1075, 1092 (9th Cir. 2015).

As the record indicates, mineral exploration projects—such as the operations plans approved by BLM—often move forward even when a mine is never developed. Moreover, at the time BLM completed the EA, Intervenors had not proposed or planned for the construction of a mine on the Palmer Project. *See Thomas*, 753 F.2d at 760–61 (finding an action "connected" when the record revealed it was at "an advanced stage of planning"). Because Appellants fail to demonstrate that the exploration plans "would [not] have taken place . . . without" the future development of a mine, *Sierra Club*, 786 F.3d at 1226, BLM did not act arbitrarily by failing to consider those future impacts within a single EA.

**AFFIRMED.**